## Brewer, et al. v. War Fork Land Company.

(Decided December 7, 1916.)

Appeal from Jackson Circuit Court.

1. Adverse Possession—Constructive Possession—Conflicting Patents. —The owner of a patent to vacant and unappropriated land is at once by operation of law put in the constructive possession of all the land covered by his patent, and of this title and constructive possession he cannot be divested by any adverse holding unless the adverse claimant actually enters upon and takes actual possession of some part of the lands covered by his patent.

2. Adverse Possession—Constructive Possession.—A person who has under a good title constructive possession of a boundary of land, is not required to take notice of subsequent deeds or patents or to look to the records for the purpose of ascertaining if anybody has secured a deed or patent covering his land. He need only look to the land itself. So long as the land itself is free from actual intrusion, his title and constructive possession will remain undisturbed and unaffected.

3. Adverse Possession—Junior Patent or Deed—Conflicting Boundaries—Necessity for Entry Upon Interference.—A person deriving title under a junior patent or a deed that laps on or includes land covered by a senior patent, will not be considered as in the adverse possession of the land covered by the senior patent unless he actually enters upon the boundary of the senior patent and establishes by an actual entry his right to hold all or some part of it by adverse possession.

4. Adverse Possession—Owner of Land by a Good Title Cannot Claim Adjoining Land Unless He Actually Enters on It.—Where a person, who owns and resides on a tract of land, secures a patent or deed for an adjoining body of land that is unoccupied, but covered by a senior patent, he cannot claim by adverse possession this adjoining

land unless he actually enters upon and takes actual possession of the adjoining land.

5. Adverse Possession—Adjoining Land Owner.—Where "A," the owner of a tract of land on which he resided, made a deed to "B" for this land and included in his deed a large body of adjoining land he did not own and that was covered by a senior patent, although never in the actual possession of any person, "B" could not by virtue of his deed and by marking a boundary around this adjoining land embraced by his deed, acquire it by adverse possession unless he actually entered upon the adjoining land.

J. R. LLEWELLYN and A. W. BAKER for appellants.

T. E. MOORE, JR., for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellants brought this suit against the appellee to recover from it the possession of two adjoining tracts of land, one containing fifty acres, for which a patent was issued to Hughes & Engle in 1861, the other containing one hundred and fifty acres, for which a patent was issued to Hughes & Engle in 1860.

For answer to this suit the appellee set up that it was the owner of all of the land embraced in these two patents except a small strip to which it asserted no title.

On a trial before a jury in the lower court there was a verdict and judgment for the appellee, and the plaintiffs below prosecute this appeal.

There is very little, if any, material dispute as to the facts. It appears from the record that all the land covered by these two patents was until lately wild, unimproved and unenclosed. There was never any dwelling house or other improvement on any part of it, nor was any part of it ever enclosed by fencing or put in cultivation. The present plaintiffs derive title to the land as heirs and vendees of the patentees, and rely exclusively upon their paper title and the constructive possession of the land embraced in these two patents that this paper title gave them.

The appellee asserts title to and ownership of the land under the doctrine of adverse possession, claiming that it and its vendors have been in the actual possession of this two hundred acres of Hughes & Engle land, claiming the same against the world, to a well-marked boundary, for more than fifteen years before the institution of this action, although it does not pretend to

have ever been in the actual possession of any part of these two patented tracts. It places its claim of adverse possession on the following facts: M. M. Ambrose in 1848 obtained a patent to four hundred acres of land adjoining but not interfering with the land for which Hughes & Engle obtained the patents in 1860 and 1861. Ambrose conveyed this land to one Rice and Rice conveyed it to one Isaacs in 1878. In 1891 Isaacs made a deed to one John Wilson by which he conveyed to Wilson a boundary of land containing by survey 636 acres, and this deed was recorded in the proper office in March, 1892. At the time Isaacs made this deed to Wilson he did not, so far as this record shows, own or have title to any land except the four hundred acres Ambrose patent. But, notwithstanding this, he conveyed to Wilson 636 acres, and this deed to Wilson included not only the whole of the Ambrose four hundred-acre patent, but all of the land covered by the two Hughes & Engle patents, except a few acres on the exterior lines of these patents.

It also appears that when Isaacs conveyed to Wilson the 636 acre boundary, the land so conveyed was accurately surveyed, and during this survey a good many trees on the lines of the survey were marked by the letters ''J. W.,'' indicating the name of John Wilson the vendee. The deed from Isaacs to Wilson also contains an accurate description of this 636 acres by metes and bounds and courses and distances. After Wilson obtained the deed to this land it came from him by regular mesne conveyances into the hand of the War Fork Coal Co., but at no time until within a short while and much less than fifteen years before this suit was brought did the War Fork Coal Co., or any of its vendors, ever have in actual possession any part of either of the Hughes & Engle patented lands. There was never at any time any dwelling or outbuildings on, or at any time any cultivation of or enclosure of any part of the land covered by these two patents, which remained until shortly before this suit in the wild, unimproved condition in which it had always been.

Going back now to the Ambrose four hundred acre patent, it appears that about 1870 a house was built on this Ambrose patent some half a mile distant from the lines of the Hughes & Engle land, and at and about the site of this house there were fencing, cultivation and improvements of various kind, although none of the im-

provements or cultivation encroached upon the lines of the Hughes & Engle patents. It further appears that continuously from 1870 tenants of the various owners of the Ambrose patent, including the War Fork Coal Co., have been in the actual occupancy and possession of the house and the improvements that were put on the Ambrose patent about 1870.

It further appears without contradiction that continuously from December, 1891, when Isaacs made the deed to Wilson for the 636 acres, Wilson and all of his vendees, including the War Fork Coal Co., have been claiming all the land covered by the deed for 636 acres.

Under these facts it is the claim of the War Fork Coal Co. that as it and its vendors have been continuously, since 1891, in the actual possession of a part of the land, and have continuously claimed to be the owners of all the land embraced within the 636-acre deed, therefore it and those under whom it claims have been since 1891, and for more than fifteen years prior to the institution of this action, in the adverse possession of the whole of the 636 acres; and it was upon this theory that it succeeded in defeating the claim of the heirs of Hughes & Engle in the lower court.

It seems to us, however, that following the rule announced by this court in many cases, neither the War Fork Coal Co. nor any of its vendors has ever been, by virtue of this 636-acre deed, in the actual, adverse possession of any part of either of these Hughes & Engle patents, or had such adverse possession within the meaning of the law as would defeat the title of the Hughes & Engle heirs. When Hughes & Engle obtained these patents in 1860 and 1861 they were at once by operation of law put in the constructive possession of all the land covered by both of these patents. So that by virtue of the patents they not only had the title to but were in the constructive possession of the land, and of this title and constructive possession they could not be divested by any adverse holding unless the adverse claimant actually entered upon and took actual possession of some part of the land covered by these two patents, and then by virtue of this actual entry and possession claimed to own to a well-marked boundary the land covered by these patents. For example, if in 1891, after Wilson had secured his deed from Isaacs, he had actually entered upon the land covered by these Hughes & Engle patents, and had made some improvements on

them by buildings, enclosure or cultivation, and he and his vendees or their tenants had remained in continuous and actual possession of the Hughes & Engle land, then this actual entry and holding continuously for fifteen years, with assertion of title to a well-marked boundary that included, as this 636-acre deed did, these lands, would have invested them with a good possessory title to these patents. But this title by adverse possession they could not secure in any other way.

The fact that the War Fork Coal Co. and its vendors had been for more than fifteen years continuously in the actual adverse possession of the land covered by the Ambrose patent, did not have the effect of putting any of them in such possession of the land covered by the Hughes & Engle patents as would defeat the title of those claiming under Hughes & Engle. Nor did the fact that Isaacs conveyed to Wilson by deed which was put to record this Hughes & Engle land, to which Isaacs had not title, oust the constructive possession of those claiming under Hughes & Engle. The fact that when Isaacs made this deed to Wilson for the 636 acres he had the boundary surveyed and marked various trees on the lines of the survey with the letters "J. W." or other marks, or the fact that Wilson had his deed put to record, did not have the effect of putting Wilson and his vendees in the adverse possession of these Hughes & Engle lands or satisfy the requirements of the law as to obtaining land by adverse possession.

A person who has under a good title constructive possession of a boundary of land is not required to take notice of subsequent deeds or patents that may be acquired by strangers to his title, or to look to the records for the purpose of ascertaining if any person has subsequently secured a deed or a patent covering the land embraced by his senior patent. He need only look to the land itself. So long as the land itself is free from actual intrusion his title and constructive possession will remain undisturbed and unaffected. These principles have been announced by this court in a long line of decisions, beginning with Trimble v. Smith, 4 Bibb, 257, decided in 1815, and ending with Cumberland Coal Co. v. Croley, 172 Ky. 222, decided in 1916, as may be seen by an examination of Fox v. Hinton, 4 Bibb. 559; Smith v. Mitchell, 1 A. K. Mar. 207; Trotter v. Cassady, 3 A. K. Mar. 365; Bodley v. Logan, 2 J. J. Mar. 254; Shrieve v. Summers, 1 Dana, 239; McCoy v.

DeLong, 22 Ky. L. R. 719; Jones v. Patterson, 23 Ky. L. R. 1838; Hall v. Blanton, 25 Ky. L. R. 1400; Woodward v. Johnson, 28 Ky. L. R. 1091; Ramsey v. Thomas, 140 Ky. 356; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801; Curtiss v. Warden, 144 Ky. 383; Frazier v. Ison, 161 Ky. 379; Louisville Property Co. v. Lawson, 156 Ky. 288; Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232; Denney v. Abbott, 163 Ky. 499; Martin v. Hall, 152 Ky. 677, and Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249.

For the purpose of illustrating that the rule laid down in these many cases applies with controlling authority to the facts of the case before us, we will take as examples extracts from the cases of Trimble v. Smith and Bowling v. Breathitt Coal, Iron & Lumber Co., premised with the statement that the rule is exactly the same whether it be applied to deeds or patents. It requires exactly the same requisites to obtain adverse possession of land covered by a senior patent under a junior patent as under a junior deed. If the facts are sufficient to show adverse holding under a junior deed, they will be sufficient to show adverse holding under a junior patent.

In Trimble v. Smith it appears from the opinion that the plaintiff, Trimble, derived title to the land in controversy by a patent dated December 2, 1785, and that the defendant, Smith, claimed title to a part of the senior patent under a patent of later date; that the defendant, Smith, settled upon and occupied the land to which he secured a patent but his settlement and occupancy were not within the interference, or, in other words, were not on the land covered by the senior patent; and the court said:

"The question presented by the agreed case is, whether the entry or settlement by the defendants upon that part of the land covered by their patent which is not within the interference between the two patents, should be construed to give them the possession of the land included with the interference. For if it ought not to be so construed, then they were not in possession of the land in dispute for twenty years prior to the commencement of the action, and consequently the plaintiff's right of entry was not tolled.

"Where there is no adverse possession there can be no doubt that a man by an entry into part of a tract may acquire the possession of the whole, provided he may law-

fully enter upon the whole; but to construe an entry into part to which he has right, to give him possession of another part to which he has no right, would be making an act which was right in itself tortious by construction. This would be wholly unwarranted by any precedent, and in direct violation of the principle of law which requires where an act is done which is susceptible of a twofold construction, one of which is consistent with law and the other not, that the former should prevail. . . . .

"Now as the entry of the defendants in this case upon the part of their tract not within the interference, if construed to give them possession of the land within the interference, would have the effect of divesting the plaintiff of his right, it is clear that such a construction is contrary to the law as laid down by Coke. Indeed, if such a construction should prevail, a party having a right might be divested of his right without any wrong being in fact done to him, or any possibility of knowing that any was intended to be done."

In the Bowling case it appears from the opinion that in 1872 a patent was issued to one Reed for a large body of land, and that the Breathitt Company by subsequent conveyances became the owner of the land embraced in this patent. In 1887 one Hix obtained a patent for a hundred acres of land which he afterwards conveyed to Bowling. The Breathitt Company brought suit against Bowling to restrain him from trespassing upon its land, and Bowling answered by setting up his title to the hundred acres which he also claimed by adverse possession. The evidence showed that the hundred-acre patent secured by Hix in 1887 was within the line of the Reed patent issued in 1872, but Bowling, notwithstanding this, asserted that he was entitled to hold the hundred acres by virtue of having had it in possession for more than fifteen years. This claim of adverse possession and ownership of the hundred acres was based on the fact that he owned and had lived for many years on a tract of land adjoining the hundred acres without having any actual possession of the hundred acres, although he asserted title to it after it was deeded to him by Hix. The court, holding that under these circumstances Bowling did not have adverse possession of the hundred-acre tract, said: "So the question comes to this: Can a man who is living on a tract of which he has title, and which is outside of the plaintiff's claim, obtain adverse possession

of land within the plaintiff's older patent simply by taking a deed to it and continuing to live outside of the lap?''

After quoting from Trimble v. Smith and many other cases, the court further said: ''If, in a case like this, a man could, while living on land which he admittedly owned, gain title within an elder patent which adjoined him, by simply marking off a boundary and taking a deed from some one to it, where there was nothing on the land to put the owner on notice of his adverse claim to it, there would be no security for land titles, and the entire doctrine that the settlement of the junior patentee, when without the lap, will give him no possession within the senior patent, would have to be abandoned. The plaintiff, having the title to the land, was in the constructive possession of it. The defendant could not defeat this constructive possession by merely living on an adjoining tract of land not included in the plaintiff's patent, and claiming land within that patent.''

It is, however, pressed upon our attention that this court in the cases of Everidge v. Martin, 164 Ky. 497, and Miniard v. Napier, 167 Ky. 208, departed from the principle laid down in the cases we have cited and announced the rule that under a state of facts such as appear in the case we have, the War Fork Coal Co. and its vendors since 1891 have been in the actual, adverse possession of the land covered by the Hughes & Engle patents.

But we do not so construe the opinion in those cases. We are very sure that the court did not in either of them set down a different rule from that announced in the cases we have cited.

It further appears that in 1888 Isaacs conveyed to John Wilson 313 acres of land, describing it by metes and bounds, and that this 313 acres, which has come into the possession of the War Fork Coal Co. by mesne conveyances, is located on the opposite side of the Hughes & Engle land from where the four-hundred-acre Ambrose patent is located and covers some parts of the Hughes & Engle land that is not embraced in the 636-acre deed. In other words, it might be said that the land covered by the Hughes & Engle patents lies between the four-hundred-acre Ambrose tract and the 313-acre tract, but when Isaacs made the deed to Wilson for the 636 acres, this tract of land, as described in the deed,

joined the 313 acres of land. So that under these two deeds Wilson had such title as he acquired by them to 949 acres in one contiguous body, and it appears that the jury, under instructions of the court, found that the coal company, by virtue of this 313-acre deed, had been in the adverse possession for more then fifteen years of such parts of the Hughes & Engle land as were not included in the 636-acre deed. The trial court being of the opinion that when these two deeds were made which conveyed to Wilson two contiguous tracts of land, the actual possession of the four-hundred-acre Ambrose tract by Wilson and his vendee carried with it the actual possession of all the land embraced within the boundary of the two deeds. Just how, or when, or from whom, Isaacs got title to this 313-acre tract, does not appear in the record. He probably discovered that it, like the Hughes & Engle land, was not in the actual possession of any person, and concluded for this reason that he could convey it, as he did all that part of the land embraced in the 636-acre deed outside of the Ambrose four hundred acres.

But as what we have said in discussing the 636-acre tract applies to the 313-acre tract, it is not necessary to repeat it except to say that there is no evidence that any person has ever been in the actual possession of any part of the 313-acre tract and the War Fork Coal Co. cannot take any part of the Hughes & Engle patents under this deed or under the 636-acre deed on the facts appearing in this record.

It is suggested that one of the deeds in the chain of title of the Hughes & Engle heirs is insufficient to support title on account of its inadequate description of the land, but we do not so think.

Nor is there any merit in the suggestion that the motion and grounds for a new trial are not broad enough to embrace the errors relied on by appellants.

Upon the facts appearing in this record, the lower court should have directed the jury to return a verdict for the appellants, plaintiffs below, and if there is another trial of the case and the evidence is substantially the same as on this trial, such direction should be given.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.