## Swift Coal & Timber Co., et al. v. Sturgill and Collins.

(Decided March 26, 1920.)

### Appeal from Letcher Circuit Court.

1. Boundaries—Courses and Distances—Description.—Upon a description of a tract of land in a state patent as "beginning on three chestnuts and chestnut oak near the head of the Pigeon fork; thence (running the dividing ridge between Turkey creek and the Line fork to the Defeated branch; thence the dividing ridge between the Defeated branch and Turkey creek), S. 10 W. 68 poles to a chestnut . . . ," held, that the dividing ridges referred to are merely ancillary descriptions of the beginning lines of the survey, also described by courses and distances, but to be considered in connection with other relevant evidence in locating the beginning lines.

2. Boundaries—Courses and Distances.—Where the surveyor actually surveyed only two of the nine boundary lines described, marking the first three corners and running the other seven lines out by protraction, the evidence showing conclusively that these first two lines followed the ridges in a general way only but not their sinuosities, and it being further shown that to follow the meanders of the ridges would not make a figure conforming to the original plat nor embrace even approximately the quantity of land called for, held that the courses and distances called for must be run in straight lines following the ridges in a general way and not their sinuosities.

3. Boundaries—Courses and Distances—Fixed Objects—Location of Patent.—The rule that ridges called for are known and fixed objects upon the land and must control in the location of a patent over courses and distances where there is ambiguity in the description does not apply where the patent, survey, plat and extraneous evidence all prove that the known and fixed ridges were not intended by the surveyor to be run along the meanders of the crest but were to be followed only in a general way and by straight lines.

D. D. FIELDS & DAY, BAILEY P. WOOTTON and JESSE MORGAN for appellants.

R. MONROE FIELDS, FELIX G. FIELDS, E. C. O'REAR and J. C. JONES for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The only question in this case is the proper location on the ground of a patent for 12,000 acres of land issued in 1846 to Isom Stamper. The effort therefore is to relocate the described boundary as did the surveyor in making the survey upon which the patent issued. The land is thus described in the patent:

"Beginning on three chesnuts and chestnut oak near the head of Pigeon fork, thence running the dividing ridge between Turkey creek and the Line fork to the Defeated branch, thence the dividing ridge between the Defeated branch and Turkey creek, S 10 W. 68 poles to a chestnut, thence S. 10 E. 98 poles to a chestnut oak sarvis, thence S. 68 W. 125 poles to a stake, thence S. 5 E. 100 poles to a stake, thence S. 68 W. 2,000 poles to a stake, thence S. 40 W. 320 poles to a stake, thence N. 1,328 poles to a stake, thence N. 77 E. 1,900 poles to a stake, thence S. 33 E. 600 poles to the beginning."

Upon the face of the patent it would seem that the described boundary had eleven sides, the first being the dividing ridge between Turkey creek and Line fork, the

second the dividing ridge between Defeated branch and Turkey Creek, and the other nine described by courses and distances, but this is not true, as is indicated by the plat filed with the certificate of survey which shows only nine sides to the boundary, and as is conclusively proved by uncontradicted evidence that the first course and distance call in the patent—"S. 10 W. 68 poles"—is from the beginning corner to a chestnut, the second corner, and that the line described as "S. 10 E. 98 poles," apparently the fourth line, is in reality, as surveyed and intended, the second line to the chestnut oak and sarvis, the third corner. To thus survey these two lines and follow the other called for courses and distances from the third corner around to the beginning corner will cause the patent to close, and as thus described it will contain approximately 12,000 acres of land as in the patent it was said to contain. Both parties to this litigation agree that so much is true, from which it results that upon a consideration of the patent, the primary evidences upon which it was issued (the certificate of survey and original plat), and the uncontradicted evidence that the first two lines described by courses and distances, the one to a chestnut and the other to a chestnut oak and sarvis, are in reality the first two lines of the boundary, and that the two ridges described must be rejected as independent and separate lines of the survey. As to what effect, if any, must be given to these two described ridges, is the real question involved in this case, as it was in two cases in the federal circuit court of appeals involving the same patent, the one—Mineral Development Company v. Tuggle, 151 Fed. 450; the other—Kentucky Coal Lands Company v. Mineral Development Company, 219 Fed. 45. In both cases these described ridges were rejected as independent and separate lines of the boundary and were held to be merely ancillary descriptions of the beginning lines of the survey also described by courses and distances, but nevertheless of potentcy and to be considered, in connection with other relevant evidence, in locating the beginning lines.

To this extent we concur in the conclusions reached in these cases, but this is as far as they agree or are relevant here. We have not the evidence before us upon which the circuit court of appeals in the first case rejected entirely the ridges in locating the land in accordance with the plat, and the courses and distances in the

patent, and in the second case held that the evidence was sufficient to carry to a jury the question of the proper location of the patent.

We come, therefore, to a consideration of the evidence in this case to determine what is the proper location of a patent which is ambiguous because of the fact at least two and possibly five of its lines are twice separately and differently described. Some pertinent and controlling facts are thoroughly established. These are:

(1) The surveyor actually surveyed only the first two of the nine boundary lines he described. These two lines he marked by establishing and marking the three corners connected by them and by marking line trees as well.

(2) These lines as run and marked by him are straight lines running the general course of the first of the two ridges referred to but not following its sinuosities.

(3) The other seven boundary lines of the patent were not actually surveyed or marked by the surveyor but were located by him simply by protraction after the actual surveying on the land had been completed.

(4) The ridges referred to in the patent are well known and permanently established objects.

(5) To follow the two lines the surveyor ran and marked out on the land and the other seven lines that he protracted, according to the courses and distances called for will follow the general course but not the sinuosities of the first of the two ridges referred to a part of its distance, but will not reach the second ridge referred to by about a mile, but the figure thus formed will conform to the plat he filed with his original survey, will close and will contain approximately the number of acres called for in the patent.

(6) To locate the patent by following the sinuosities of the first ridge referred to until the second is reached and following the meanderings of the second ridge without regard to the courses but for the approximate distance of the third, fourth and fifth lines, will reach a point on the second ridge known as Eagle Gap, near if not at the end of that ridge, but which is not mentioned in the patent or certificate of survey, nor indicated upon the original plat. To close the survey thus started by starting the sixth line at Eagle Gap the courses and distances called for on the seventh and eighth lines must

be entirely disregarded, the figure will not conform in appearance to the original plat, and the boundary will contain only about half as many acres as called for by the patent and survey.

A certain and necessary inference to be drawn from these facts is that the surveyor in locating this land for patent, so far as he located it upon the land, did not follow the sinuosities of the first ridge described and therefore did not mean when he said "thence running" these ridges to follow the sinuosities of either, but intended only to follow their courses in a general way as he had done so far as he ran them. This destroys absolutely appellees' theory that the combined distances of the third, fourth and fifth lines were to be exhausted in following the meanderings of the top of the two ridges and that at the point of exhaustion the sixth line was to begin. Not only so, but it leaves no way, even by disregarding both the distances and calls of the seventh and eighth lines, by which the boundary may be closed so as to form a figure resembling the original plat or containing more than about half as many acres as were intended to be and believed had been included.

The only evidence offered by the appellees to justify such a location was proof that along the top of the two ridges were marked trees which as early as 1863 had the appearance of old marks, and that Isom Stamper from 1863 and possibly earlier had claimed and by general reputation in the community was believed to own all of the land on the Turkey creek side of these two ridges to the tops of same.

The preponderance of evidence upon the question of the age of marks upon such trees as are marked along the top of these two ridges is that they were not nearly so old as this patent, and there is no evidence whatever that at the time of the survey any trees except the first, second and third corners and some trees on these two lines, were marked by the surveyor or with his knowledge. Upon the contrary, it is conclusively established that when he reached the third corner which he marked and called for in his survey, he quit the field and completed his work elsewhere simply by protraction. This evidence for the appellees is therefore wholly insufficient to establish any original location of the patent along the meanders of the ridges whatever might have been its effect if a question of adverse possession were involved.

We are therefore clear that the chancellor erred upon the evidence in this case, which includes, of course, the certificate of survey and original plat, in locating the first five lines of this patent along the tortuous course of the crest of the two ridges referred to in the patent.

But learned counsel for appellees argue most earnestly that the ridges called for are known and fixed objects on the land and must therefore control in the location of the patent over courses and distances where there is ambiguity in the description and uncertainty as to the proper location. This is unquestionably one of the most thoroughly established rules for construing and locating a patent and when applicable often controls. The trouble here is not with the rule but its application to the facts. The patent, survey, plat, and extraneous evidence all prove that these known and fixed ridges were not run or intended to be run by the surveyor in the original location of this patent along their crests as they meander, but were to be followed only in a general way and by straight lines, two of which he surveyed and marked, about which there is no trouble whatever, but as to the other three straight lines, which he unquestionably intended should also follow these ridges in a general way, he has left absolutely nothing for our guidance in fixing their exact location, as we must do, but their courses and distances.

When we reach the end of the fourth line we are at a point on the side of the first ridge and at least a mile from the top of the second ridge. We might possibly extend this fourth line until it reached the second ridge in accordance with an approved rule of law (if we could tell when we reached the second ridge and at what point thereon to stop) and by adding an equal distance to the opposite (seventh) line, close the survey with a boundary nearly conforming to the plat, although this would include nearly, if not quite, 17,000 acres instead of the 12,000 acres intended and believed to have been included. But the fact that we cannot tell even approximately where we should end the fourth line so as to lay the fifth line upon the second ridge as intended, precludes the possibility of our adoption of this plan to give effect to the reference to this ridge in locating the patent. We certainly would not be justified in extending the fourth line to the top of the second ridge, a distance of about a mile, even if we could be certain when we reached the

second ridge, because the surveyor began his survey some little distance (about 150 feet) from the top and on the side of the first ridge, and the lines he surveyed—the first and second—and those protracted—the third and fourth—which follow the general course of the first ridge, do not follow the top. They are near the top merely and cross it in one instance at least and possibly oftener. But these lines furnish no certain location for the fifth line, which we must locate certainly from the evidence before us, and this we cannot do except by the called for courses and distances of the patent, which, after all, furnish the only possible method of locating this patent that is reconcilable with the patent, original survey, plat and extraneous evidence of the original location as actually made.

We are not permitted to guess where upon the second ridge it was intended to lay the 5th line, nor can it be determined accurately from the five maps and evidence in this record where the first ridge ends and the second one begins, since the two are but one continuous ridge with Turkey creek on one side and Line fork and Defeated branch meeting about midway on the other. Consequently the second ridge, considered as only it can be, as an aid in locating the lines otherwise and more accurately described, is of no practical value whatever, and of necessity must be disregraded entirely.

Wherefore the judgment is reversed and cause remanded with directions to enter a judgment in conformity herewith.