## Kentucky Union Co. v. Cornett et al.

(Decided March 24, 1933.)

SAMUEL M. WILSON and BAILEY P. WOOTTON for appellant.

F. J. EVERSOLE for appellees.

Opinion of the Court by Creal, Commissioner— Reversing.

The Kentucky Union Company, a corporation, is appealing from a judgment of the Perry circuit court wherein it was decreed that Marion C. Cornett and other heirs and vendees of Archibald Cornett are the owners of a tract of something over 200 acres of land on Graves branch of Big Leatherwood creek in Perry county.

This action was instituted by appellant on February 27, 1917, and while it was brought in equity it is really an action in ejectment. In its petition appellant alleges that it is the owner and entitled to the possession of a large tract of land, the boundary of which is set out in the petition and includes the land in controversy.

In their original answer appellees controverted the allegations of the petition, and in a second paragraph alleged that they are the owners and were in actual possession of a tract therein described containing 234.52 acres, and that they and those under whom they claim had been in the adverse possession of the entire tract continuously for more than 15 years next before the institution of the action.

By reply filed on February 4, 1918, appellant traversed the affirmative allegations of the answer, and the case was permitted to lie dormant until April 21, 1927, when Jessie L. Horn and Mack Horn, infant children and only heirs at law of Frank Horn, deceased, who joined as party defendant in the original answer, by their mother and next friend, Lizzie Horn, and Lizzie Horn, administratrix of the estate of Frank Horn, filed their petition to be made parties. In their petition it was alleged that on March 17, 1914, Arch Cornett by a written contract sold to Frank Horn an undivided one-half interest in the boundary of land set out and described in the original answer; that, after the death of Arch Cornett, Frank Horn instituted an action against his heirs asking for a specific performance of the contract, and was adjudged entitled to the relief sought; that, by reason of these things, they were the owners and entitled to one-half interest in the lands, and they asked for relief accordingly.

On October 18, 1929, defendants filed an amended

answer by which they set up claim by adverse possession to another tract of land containing 20 acres, the boundary of which conflicts with the boundary claimed by appellant and described in its petition; however, it was adjudged that appellant was the owner of this tract, and, since there has been no cross-appeal prosecuted and no question seems to have been raised as to the correctness of the judgment in this respect, it will be unnecessary to give further attention to this branch of the case.

In an amended reply appellant alleged that the greater part of the tract of land described in the second paragraph of the original answer is claimed by defendants under patent No. 43089 for 150 acres issued to Hiram Cornett upon a survey made February 23, 1869, which survey and patent are junior and inferior to the survey and patent of Isam Stamper, No. 10899, under which appellant claims title, and is also inferior and junior to patent No. 24955 for 200 acres issued to one Andrew Wilson upon a survey made December 14, 1850; and that appellant is the owner of the land claimed by defendants under both the Stamper and Wilson patents; that any possession defendants or their ancestor, Arch Cornett, and those under whom they claim inside of the boundary described in the original answer was wholly confined to land within junior patent 43089 and to land within a certain junior patent for 50 acres issued to James Cornett upon a survey of March 28, 1873, which lies partly inside of patent 43089 and to lands inside of junior patent 43292 for 100 acres issued in the name of Arch Cornett, Jr., on survey of February 23, 1869; that the James Cornett and Arch Cornett, Jr., patents lie almost wholly within the patent No. 22170 for 100 acres issued in the name of Arch Cornett upon a survey of March 11, 1836, which is senior to the Isam Stamper patent No. 10899, and to the extent of its conflict with the Stamper patent it is not claimed by appellants; that part of the land claimed by defendants lies inside of a junior patent No. 56567 for 200 acres issued to Basil Cornett upon a survey of February 17, 1882, which overlaps and conflicts with the H. Cornett patent No. 43089; that defendants have no title to the Basil Cornett patent, and have never had any possession thereof; that the patents under which appellees claim title are all junior and inferior to the Isam Stamper patent, and the possession, if any, of

appellees and those under whom they claim inside of the junior surveys or patents was taken at a time when the Isam Stamper survey and patent was in the possession of appellant and those under whom it claims; therefore any possession of appellees should be confined to the actual inclosure made by them or their ancestor, Arch Cornett. The reply also pleaded that, by reason of judgments in certain actions involving the title to the lands in controversy to which Arch Cornett and those under whom he and appellees claim title, they are estopped to claim title to the lands, and their right of recovery is thereby barred.

The pleadings, orders, and judgment in some of these actions are set out at length in the reply as amended, and will presently be further discussed.

A large volume of proof was taken, including records, title papers, etc., and on final hearing it was adjudged that of the lands in controversy appellant is the owner of four small tracts described in the judgment, and that appellees are the owners of the remainder, composed of two boundaries also fully described therein; that appellees and those under whom they claim had been in the continuous adverse possession of the two tracts which they were adjudged to own to well-marked and well-defined boundaries claiming to the full extent thereof for more than 15 years and more than 30 years next before the day on which appellant's petition was filed. It was further adjudged that certain deeds in appellant's chain of title are champertous and void, in so far as they embrace these two tracts of land, because at the time they were made appellees and those under whom they claim were in adverse possession of both tracts in their entirety.

The Isam Stamper patent under which appellant claims title was issued on February 5, 1848, pursuant to a survey made for him on July 24, 1846, and the boundary contains about 12,000 acres, approximately 9,500 acres of which is within the present county of Perry, and the remainder being in the county of Letcher, since created. In its petition, appellant claims title to all the land in the patent boundary which lies within Perry county, except something over twenty exclusions where the Stamper patent conflicts with senior patents, which are set out in the petition, and to which appellant

makes no claim. The only exclusions in any way affecting the boundary in dispute are lands included in patent No. 22170 for 100 acres issued to Archibald Cornett on a survey made in 1836, and lands included in patent No. 6356 for 300 acres issued to Archibald and John Cornett on a survey made in 1844. The Hiram Cornett patent No. 43089 surveyed in 1869, and under which appellees claim title, includes practically all of Graves branch, and is all on the east side of Big Leatherwood creek, except a narrow strip where the boundary line crosses and runs near the west side thereof. It conflicts with the Arch Cornett patent No. 22170, which lies principally on the west side of Big Leatherwood, but includes a narrow strip of land on the east side. It also conflicts with a small corner of the Arch and John Cornett patent No. 6356 near the confluence of Graves branch with Big Leatherwood. It is all included within the boundary of the Isam Stamper patent.

Appellant not only claims legal title running back to the commonwealth, but also that it has had actual possession of all the lands in Perry county within the Stamper patent boundary, including the land in controversy, and outside of the exclusions continuously from 1896 up to the time and since this action was commenced. As we view the record, it is unnecessary to go back of the judgment in the consolidated cases of Kentucky Union Company v. Arch Cornett, etc., and C. J. Little v. Vincent Boering, Arch Cornett, etc., entered in the Perry circuit court on September 13, 1902, pursuant to mandate which issued from this court in the case of Kentucky Union Company et al. v. Cornett et al., 112 Ky. 677, 66 S. W. 728, 729, 23 Ky. Law Rep. 1922, and which is specifically pleaded in bar of appellees' right to recover.

Counsel for appellees maintains that they are not barred or estopped by that judgment to assert ownership of the boundaries in controversy because they were not involved in that action. But in this counsel falls into error. Title to all the lands in Perry county within the boundary of the Stamper patent and without the exclusions set out in the petition was involved, and Arch Cornett and the other defendants were "perpetually restrained and enjoined from entering upon the tract of land hereinafter described and from cutting any timber thereon, and from removing any trees or

timber therefrom and from entering upon said land for any purpose whatsoever." The land is described as "all that tract of land * * * in Perry county * * * embraced within the boundary of land described in patent No. 10899 from the Commonwealth of Kentucky to Isam Stamper, dated Feb. 5, 1848 * * * and the land embraced in said patent is described therein as follows." The judgment then gives the boundaries as shown by the patent, and continues:

"Said patent contains about 12,750 acres of land of which 9,478 acres is situated in Perry county and is owned by plaintiff and covered by this injunction except the following described lands so far as they conflict with the boundary in Perry County above described to-wit."

Then follows the exclusions which are the same as set out in the petition in this action, and which do not include any lands within the boundary of the Hiram Cornett patent except as hereinbefore indicated.

The controversy in the consolidated actions hereinbefore referred to did not end with the judgment of February 13, 1902, but was again before this court on the question of the value of the logs cut from trees purchased by C. J. Little from appellant which had been taken by the defendants Arch Cornett and others. The conflicting claims of the respective parties to ownership of the logs necessarily involved the title to the land from which they were cut. The issue was determined in favor of Little, and final judgment was entered in 1906 and less than 11 years before the petition in the case at bar was filed. See Little v. Cornett et al., 91 S. W. 272, 28 Ky. Law Rep. 1124.

On February 20, 1902, Arch Cornett and his son M. C. Cornett, one of the appellees here, entered into a written contract whereby they attempted to sell to one A. B. Asher a large number of trees on various tracts of land, including 275 on the land of John Holbrook. In 1888 Hiram Cornett made a deed to John Holbrook for the lands included in the boundary of patent No. 43089, and it is made to appear that this was the land from which the Cornetts attempted to sell the 275 trees.

In December 1902, the Kentucky Union Company instituted an action against A. B. Asher, to whom the Cornetts contracted to sell the trees, and one Taylor Sizemore, asserting title to all the lands in Perry

county included within the boundary of the Stamper patent, but outside of the exclusions where it conflicted with senior patents, and sought to enjoin the defendants in that action from cutting timber from its lands, including the lands in the Hiram Cornett patent on Graves branch.

On final hearing of the cause, it was adjudged that the Kentucky Union Company was entitled to the relief sought, and that it was the owner of the lands claimed in its petition. Among other things, it was further adjudged ''that the timber cut by the defendants on Graves Branch is within the 12,000 acre Stamper survey and without the exclusions set out in the petition herein; that the Hiram Cornett 150 acre survey under which the defendants claim the timber on Graves Branch is and was void and that the defendants and those under whom they claim had neither continuous nor adverse possession of same or of said 1200 acre Lewis survey.'' The defendants were also enjoined and restrained from entering upon the lands described in the judgment, including the lands in the Stamper patent subject to the exclusions above mentioned.

Thereafter A. B. Asher instituted an action against Arch Cornett seeking to recover on account of breach of warranty of the trees sold under the above-mentioned contract. The cause was referred to a special commissioner, and by final judgment his report of his findings was ''in all things sustained and affirmed.'' Among other things, the report contained the following as item 2:

''I find that the defendant is chargeable with the loss of title to trees on the John Holbrook's tract of land Graves Branch. * * *''

By the pleadings in the latter case an issue was made by Arch Cornett on the allegation that the title to the trees on the Graves Branch land failed because of the superior title of the Kentucky Union Company, but this issue was again determined against him.

In 1882 Isam Stamper conveyed to T. G. Stewart all the lands included in the Stamper 12,000-acre patent in Perry county, and Stewart in turn conveyed same to appellant. After securing the deed from Stewart, appellant instituted an action in the Perry circuit court against Isam Stamper to quiet its title to the lands as

described in the Stamper patent. It appears that in these conveyances there had been a mistake in the description of the lands.

By answer Stamper denied that he was making any claim to the lands, and alleged that he had conveyed all his rights, title, and interest to all the land in Perry county within the Stamper patent to Stewart by his deed of 1882. On December 20, 1887, the court entered judgment quieting appellant's title and forever barring Stamper from claiming title to the lands. The effect of that judgment as against Arch Cornett and others, not parties to the action, is fully discussed in Kentucky Union Company et al. v. Cornett et al., supra.

From what we 'have already said it will be seen that the title to the lands in controversy was involved in the case of Kentucky Union Company et al. v. Cornett, supra, and the judgment definitely determining appellant's ownership thereof, quieting its title thereto, and enjoining and restraining Arch Cornett from entering upon it for any purpose whatsoever, operated to suspend any adverse holding by him and to stop the running of the statute of limitation in his favor. Perry v. Eagle Coal Co., 170 Ky. 824, 186 S. W. 875. Not only so, but the later judgments to which we have referred in actions against Arch Cornett and persons in privity with him, and which were entered within 15 years before this action was instituted, had the same effect as to them. Because of the continued possession of appellant and those under whom it claimed, as clearly established by proof and by judgments to which we have referred, it is apparent that the deeds from the heirs or vendees of John Holbrook to Arch Cornett or to Arch Cornett and son were champertous and void under section 210, Kentucky Statutes. Appellant not only established legal title to all the lands claimed in its petition, running back to the commonwealth, but established by leases of record and by other evidence that it has been in the continuous possession thereof since the year 1896. In the light of the proof, and because of the judgment to which we have referred, it is manifest that the court erred in holding any of the deeds in appellant's chain of title to be champertous.

Wholly apart from the effect of the judgments referred to and a number of others pleaded and relied on by appellant, in each of which it was adjudged to have

title to all the lands claimed in the petition, but which we deem it unnecessary to discuss in this opinion, it may be said that appellees have failed to sustain their plea of adverse possession. The proof does show that for many years prior to the rendition of the judgment in the case of Kentucky Union Company et al. v. Cornett et al., supra, there had been sporadic entries upon and periods of occupancy of the lands in controversy by different persons, and some witnesses testified that the land had been in possession of some of these parties or their successors for a long number of years, but, when the witnesses came down to detailing facts within their actual knowledge, it is not made to appear that such possession was continued and unbroken.

In the opinion of Kentucky Union Company et al. v. Cornett et al., it is said:

"The evidence is insufficient to show an adverse possession of any of the land by appellees, or those under whom they claim, for the statutory period."

Neither John Holbrook nor Hiram Cornett ever lived within the boundary of the Hiram Cornett patent or any of the land in controversy. John Holbrook lived within the boundary of the Arch Cornett patent No. 22170, surveyed in 1836, but not within the interference of the Hiram Cornett patent therewith.

The general rule as laid down in Burnett v. Miller, 174 Ky. 91, 191 S. W. 659, 662, and approved in the later case of Fields et al. v. Wells et al., 224 Ky. 620, 6 S. W. (2d) 1110, is thus stated:

"We have frequently written that a party who enters upon land to which he has title cannot, as against the superior title holder, extend his possession to an adjoining tract of land and acquire title thereto by adverse possession, without actually entering upon such adjoining tract and holding it adversely for the statutory period."

Under this rule John Holbrook could not extend his boundary to lands owned and in the possession of others by merely marking boundary lines, nor could Hiram Cornett. It is claimed that Arch Cornett acquired possession to three separate and distinct tracts of the land in controvesy by deed from certain heirs and vendees of John Holbrook. One of these tracts

was claimed by William Holbrook, a son of John Holbrook, and the other tracts by Andrew Shepherd and John Couch, his sons-in-law. The evidence indicates that he allotted the lands to these parties, but did not make conveyance to all of them, or at least it is not shown in the record.

Shepherd lived in a cabin on land near the head of Graves branch and Couch in a cabin farther down this branch. Will Holbrook lived in a house nearer Big Leatherwood, but, as we understand the evidence, the house he occupied was within the boundary of senior patent 22170. However that may be, the evidence as to the continued occupancy of the land by these parties and those under whom they claim, as well as those claiming under them, is vague, uncertain, and far from convincing.

There is evidence by wholly disinterested witnesses that these cabins would be unoccupied for a year or more at a time; that they were all destroyed by fire many years ago, and were not occupied at the time they burned; however, the evidence is not clear as to whether they burned before or shortly after this suit was instituted. The evidence further discloses that the parties who occupied these cabins only cleared and inclosed a few acres around them, and even if it had been shown that their holdings were of such a character and duration as to ripen into title, it would, in the circumstances shown, only extend to lands which they had inclosed and used. Kentucky Union Company v. Hevner, 210 Ky. 121, 275 S. W. 513, and cases therein cited.

Our conclusion is that the judgments to which we have referred are conclusive as to the title of appellant against appellees, Perry v. Eagle Coal Company, 170 Ky. 824, 186 S. W. 875, and that the facts necessary to prove title by adverse possession in appellees is too clouded and equivocal to show title in them or to overcome the showing of title in appellant.

Judgment reversed, with directions to set aside same and enter a judgment in conformity with this opinion.