## Kentucky Union Co. v. Beatty et al.

(Decided June 2, 1933.)

WILSON & HARBISON, SAMUEL WILSON and BAILEY P. WOOTTON for appellant.

JESSE MORGAN for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This suit in equity was brought by the appellant, Kentucky Union Company, against the appellees, Bertha Kelly Beatty and her husband, C. A. Beatty, to quiet its title to certain lands and to enjoin defendant from further entering and trespassing thereon.

Upon submission of the cause for judgment, all relief was denied the plaintiff and its petition dismissed.

The relative position of the parties being the same upon appeal as in the original trial, we shall hereinafter refer to appellant and appellee as plaintiff and defendant respectively.

The plaintiff, Kentucky Union Company, a Ken-

tucky corporation, brought this suit in March, 1929, claiming title to the land in controversy under a certain grant No. 10899, for 12,000 acres issued by the commonwealth of Kentucky to Isham Stamper in February, 1848, pursuant to a survey made for the patentee July 24, 1846. It is alleged by the plaintiff in its petition that within the 12,000-acre boundary therein described, some 9,478 acres of the land are situated in Perry county, Ky., and which patent is made subject to numerous exclusions of prior grants lying within its exterior boundary, among them being three grants to Sampson Brashear, and that the land involved in this controversy lies without these exclusions. Plaintiff alleges that the land here in controversy was chiefly valuable for its timber and that the defendant had wrongfully, within the last five years, entered upon this certain land, which was without the exclusions, and was claiming it and was about to cut the timber, which was its chief value, and prayed judgment quieting its title thereto and for an injunction enjoining the defendant from further trespassing on the land.

The defendant answered, denying her alleged trespass or wrongful entry upon the land in controversy, claiming title to the entire 94 acres (a) by title of record superior to that of appellant and (b) by adverse possession. Defendant by her answer expressly admits that this 94 acres here involved lies within the exterior boundary line of plaintiff's Isham Stamper grant mentioned in its petition but alleges that the 94 acres "is within the exclusion set out and described in plaintiff's petition," and in addition to her claim of ownership by title of record, she alleges that she has acquired title to the said 94 acres by actual, adverse possession.

Plaintiff by its reply specifically denies the foregoing claims of title made by the defendant and further alleges and concedes that all that part of the 94-acre tract in controversy and described in the answer which lies inside of the three Brashear patents, or any one of them, is not owned or claimed by plaintiff but is owned by the defendant Bertha Kelly Beatty. The three Brashear patents, which are senior and superior to the grant under which plaintiff claims and which partly encompass defendant's land, are, to wit: No. 24399 for 200 acres, granted by the commonwealth of Kentucky to Sampson Brashear upon a survey made in February,

1837; patent No. 3845 for 200 acres granted him upon a certain survey made in October, 1839, and patent No. 5711 for 1,731 acres granted him by the commonwealth upon a survey made in May, 1844. It further alleged that none of the said three surveys, when properly located on the ground, cover or include the eastern 50-acre portion of this 94 acres claimed by defendant and as to which 50-acre portion the plaintiff asserts title of record derived from its Stamper patent, but denies that either the defendant or those under whom she claims ever had actual or adverse possession of any part of the said eastern 50 acres of said 94-acre tract, further alleging that such possession as the defendant or her grantors may have had of any part of it was confined to the 44 acres thereof lying at the western end of this Beatty tract and wholly within the stipulated exclusions, as being located within one or more of the three Sampson Brashear surveys, admitted senior to the plaintiff's Stamper survey of July, 1846.

Further, it appears that on the trial below the parties thereto expressly stipulated that the Stamper patent No. 10899, under which plaintiff claims title to the land, as actually located on the ground, covered all the land in controversy herein and that plaintiff has good title of record to all the lands inside the boundary of said patent not covered by grants senior thereto and not lost to other claimants by adverse possession, and further stipulated that the questions of actual possession of any of the land in controversy by either of the parties hereto, as to whether defendant has acquired title thereto by adverse possession for the requisite length of time and as to the true and proper location of any grant or grants senior to the Isham Stamper grant are left open for determination.

Issues being joined and proof taken, on final hearing the circuit court, denying plaintiff all relief prayed, dismissed its petition, from which ruling of the court plaintiff appeals.

It appears by the record that the patent to Isham Stamper, through which plaintiff claims title, was based on the survey made in July, 1846, and was issued after the three aforementioned Brashear patents. Also, it is admitted that it included a large boundary of land entirely surrounding the three Brashear patents but

was inferior thereto. The 94 acres of land in controversy, claimed by defendant, it is also admitted lies within the Isham Stamper patent and the first question to be here determined is, Does it also lie within the three Sampson Brashear patents, which are expressly excepted out of the Stamper patent?

Sampson Brashear settled on Big Leatherwood creek in Perry county some time prior to 1832. He owned a boundary of land extending down Big Leatherwood creek to the Thomas Yearly farm. This boundary of land owned by Brashear, upon which he lived and made his home, was owned and claimed by him by reason of the aforementioned surveys (among others) and grants pursuant thereto made him by the commonwealth in 1837, 1839, and 1844, respectively. He lived and reared his family on this boundary of land and in his lifetime divided it among his five children. In this division, he conveyed to his daughter, Louisa Brashear Lusk, the land situated on the lower end of his farm, adjoining the Thomas Yearly farm, by deed dated July 6, 1872. In July, 1902, Louisa Lusk and her husband, John W. Lusk, sold and conveyed this land, comprising some 200 acres, by the same calls and boundary as contained in the deed which her father, Sampson Brashear, had made to her, to Jonah Ison, who was then living on the adjoining Thomas Yearly farm, which he had acquired by purchase from Yearly in 1877. Here Ison continued to live, holding both the Yearly and Lusk tracts, until his death in 1911. After he died, an action was filed to divide his land among his children and grandchildren and in that division the 94 acres of land here involved was set apart to his then infant granddaughter, Bertha Kelly (now Mrs. Beatty), and conveyed her by the court commissioner.

The Jonah Ison lands, out of which the 94-acre tract claimed by appellee was carved, as described in the commissioner's deed thereto of September, 1914, to Bertha Kelly, consisted of the boundary described in the deed of December, 1877, from Thomas Yearly to Jonah Ison and the boundary described in the deed of July, 1922, from Louisa Lusk and her husband to Jonah Ison. The Lusk deed also rests on the prior deed of July, 1872, of her father, Sampson Breashear, to her.

The first of the two deeds to Jonah Ison, namely

that from Thomas Yearly in 1877, does not profess to derive from any other title paper in the record and no antecedent deed or patent is offered in support of it. Therefore, none of its lines can be related to any of the patent lines involved in this case.

According to the proof for the plaintiff, none of the three Sampson Brashear patents covers the east 50 acres of this 94-acre tract conveyed to Mrs. Beatty. According to the proof of the defendant, all her land lies within these patents.

It is admitted that the west 40 odd acre portion of the 94-acre tract allotted her is within one or more of the agreed exclusions of the Brashear surveys and her claim of ownership thereto is not disputed. It is also further admitted that the east 50 acres of said tract is included in the deed which Sampson Brashear made to his daughter Louisa Lusk and in the deed which she in turn made to Jonah Ison, but it is insisted by the plaintiff that the said 50 acres is not within the exclusion of the Breasher surveys when properly located and, therefore, being without or not embraced within the same, it results that such east portion of the Beatty tract is, according to the stipulation, a part of its land held and owned by it under the Stamper patent.

Plaintiff's title to the land in Perry county, embraced within this Stamper patent, as well as the proper location upon the ground of this patent according to its plat and identification of its boundary, have been involved and adjudicated in several cases before this court. See Kentucky Union Co. v. Gilliam, 235 Ky. 316, 31 S. W. (2d) 388; Kentucky Union Co. v. Hevner, 210 Ky. 121, 275 S. W. 513; Swift Coal & Timber Co. v. Sturgill, 188 Ky. 694, 223 S. W. 1090; Kentucky Union Co. v. Cornett, 112 Ky. 677, 66 S. W. 728, 23 Ky. Law Rep. 1922; Kentucky Union Co. v. Cornett, 248 Ky. 360, 58 S. W. (2d) 655.

The question as to whether plaintiff or defendant is the owner of record title to this disputed 94-acre tract thus turns upon the proper location within the Stamper patent boundary of the three prior Brashear patents. One surveyor located these latter patents so as to include all the land in controversy. Two surveyors for the plaintiff located them so as not to include the east 50 acres of the 94-acre tract allotted to Mrs. Beatty.

The location of these three Brashear surveys, the record shows, involves some confusion due to the uncertainty in and the crossing of some of their calls; especially is such found to be the case in locating according to its lines and calls the Breashear survey of 1844, called the "shoestring" boundary, extending some 25 miles in its course and overlapping and largely embracing Brashear's earlier patented 200-acre survey of 1837, yet, we are of the opinion that the true and actual location of all these three Sampson Brashear surveys, which are senior to the Isham Stamper survey, is shown and conclusively determined by the evidence given in the record. The rule established by this court for locating patents is as follows:

"The supreme task of the court in locating a patent is to ascertain the intention of the parties at the time of making the survey, and to adopt the location which the parties intended to make upon the ground at the time. For the performance of this task numerous rules have been adopted largely, if not entirely analogous to the rules for the construction of other contracts and writings. * * * Everything else being equal, courses and distances surrender to natural objects, and when there are no natural objects called for, considerable weight should be given to courses and distances, but in running a line along a given course to a designated point that point should be reached at the expense of the given distance."

Kentucky Union Co. v. Shepherd, 192 Ky. 447, 234 S. W. 10, 11. Therefore, guided by this rule, we are persuaded that the location of these patents as worked out by appellant's witnesses realized this required objective.

The principal witnesses for appellant in the location of the Brashear surveys were two surveyors, who, it appears, have had long and extensive experience in locating and surveying land grants and boundaries in Perry county and other counties of eastern Kentucky. They testified as to the true and correct location of the Breashear surveys both from their general knowledge as surveyors and also from their knowledge obtained from going upon the ground and establishing the lines, corners, and boundaries material to this controversy. They exhibit their work thus done by maps prepared by them, which are before us as a part of the record.

Without attempting here to either summarize this voluminous evidence offered by the parties or to elaborate upon the showing made by the maps of either the plaintiff's or defendant's surveyors, it is sufficient to say that from a careful and studious review and consideration of the record, we are of the opinion that the three Brashear patents were properly established and located by the plaintiff's witnesses, in that their testimony, as well as the maps introduced in evidence and explained by them as showing their reasons, information, and rules followed in making such location, persuades us that the same have been correctly established.

With the definite and actual location on the ground of each of the three foregoing Brashear patents, approved by us as clearly worked out and carefully determined, as contended for by plaintiff, our attention is next directed to the further question as to what line or lines of any or all of these surveys thus located affect the parties' property division line here in controversy. Our examination of the evidence and all the maps here before us show that this 94-acre tract claimed by the defendant is divided by the fourteenth line of the 1837 survey and the forty-second line of the survey of 1844, the location of these two lines being identical. Also, this tract is further bisected by the fifteenth line of the 1839 survey, slightly deviating from the above two. From this it follows, and we so conclude, that all that part of the 94-acre tract which lies on the west of these three patent lines called for in these Brashear grants must belong, as is conceded by plaintiff, to the defendant and, by like token, all the other part of this tract lying to the east of these three patent lines in question, as claimed by the appellant, Kentucky Union Company, under title thereto derived from the Isham Stamper patent, must and does belong to the plaintiff. The fact is, as shown by the testimony of the surveyor W. A. Ward, introduced by the plaintiff, that the Kentucky Union Company has had for many years this fifteenth line of the 1839 Brashear survey, which thus separates the eastern and western parts of this 94-acre tract in controversy, located and marked as the true division line between its property and that within the exclusions of the three Brashear patents, and it has been so publicly located and conspicuously marked as such, for it and its predecessors in title by several other surveyors

for many years. In fact, this division line as marked by or on behalf of the plaintiff follows and coincides with this fifteenth line of the 1839 survey and but slightly deviates from the aforesaid two division lines located by other patents, and runs from north to south entirely through this 94-acre tract. The effect of our here approving and adopting it as the proper division line between the properties of the plaintiff and defendant is that it gives to the defendant all that part of the 94-acre tract in controversy which lies to the west of all three of the Brashear patent lines in question. We are therefore of the opinion, after a painstaking and careful review of all the proof in this case, that the decided weight and preponderance thereof shows that the defendant is entitled to hold not more than the western stated 40 odd acres of this 94-acre tract claimed by her and that it equally as clearly shows that the plaintiff is entitled to the remaining eastern portion of the tract, estimated at some 50 acres, or that part of it lying to the east of the three patent lines in question.

Having thus disposed of appellee's claim of title of record to the 94-acre tract as superior to that of appellant adversely to her claim, we will now consider her claim thereto based upon her alleged adverse possession, which matter was also by the stipulation of parties left open for our determination upon their proof as made.

The defendant by her answer pleaded that the boundary of her 94-acre tract of land in controversy lies wholly within the exterior boundary lines of the Isham Stamper grant No. 10899, mentioned in plaintiff's petition, and that she and those under whom she claims said boundary of land have been in the actual, open, peaceable, continuous, and uninterrupted possession of said boundary of land for a period of more than thirty years and that the said tract's entire boundary as described in her deed thereto was well marked and defined and had been so marked and defined for more than thirty years and that her claim of ownership thereto had been adverse, open, and notorious to all the world and especially to the plaintiff.

The evidence shows, as hereinabove set out, that Louisa Lusk and her husband, John Lusk, in 1902 conveyed to Jonah Ison some 200 acres of land adjoining his then home place, which she had received from her

father, Sampson Brashear, in 1872 and that she conveyed this property by the same boundary description as that given and contained in the earlier deed received from her father. Further, the evidence shows that out of this Lusk tract conveyed Ison, the 94-acre tract in question was, in the division of Ison's estate, allotted to the defendant, his granddaughter, and deeded her in the year 1914. The evidence further shows that shortly after the conveyance of this Lusk land to Jonah Ison, he soon thereafter entered upon the Lusk tract and cut and removed considerable timber therefrom and also that he cleared up some parts of the Lusk land, erected buildings thereon, and perhaps fenced and cultivated the tracts thus cleared and cultivated. Also it appears that Jonah Ison, while continuing to occupy and live upon his Yearly farm, marked the entire outside boundary of this purchased adjoining Lusk tract, including the Beatty 94 acres in controversy, to which he claimed title under the Lusk grant. However, it is equally clear by the record that while such steps and action were taken by Jonah Ison and his tenants as to certain parts and portions of this Lusk boundary conveyed him neither the defendant nor any of those under whom she claimed title to the land in controversy have ever entered upon taken any actual possession of any part of the 94-acre tract in controversy lying without the excluded Brashear patents or to the east of their division lines bisecting it as above mentioned and described. The character of proof offered by defendant as tending to show actual possession by those under whom she claimed possession of the eastern portion of this land in controversy, we are of the opinion was wholly insufficient to establish any actual possession ever taken of it, much less a possession thereof as claimed adverse to the plaintiff, Kentucky Union Company, then holding possession of the land east of this division line constructively if not actually under the superior fee title thereto, derived under the Stamper patent.

The deed of Louisa Lusk to Jonah Ison in 1902 was ineffectual to vest title in Ison in derogation of the title of Stamper and those claiming under him, in the absence of any entry within Stamper's holding and actual adverse possession thereof under the stated deeds for the required statutory period by those claiming under them. Just as Breashear's surveys in question were

senior to the Stamper survey, so the Stamper survey was itself senior to these later deeds, which embraces more land in their marked boundaries than was covered by the Brashear's surveys under which claimed. The mere marking of the lines in conformity with the calls of the Lusk deed or any of them did not constitute such entry or adverse possession. Brewer v. War Fork Land Co., 172 Ky. 598, 189 S. W. 717; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249, 120 S. W. 317, 319; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2; Frazier v. Ison, 161 Ky. 379, 170 S. W. 977.

In the case of Bowling v. Breathitt Coal, Iron & Lumber Co., supra, the court said:

"If, in a case like this, a man could, while living on land which he admittedly owned, gain title within an elder patent which adjoined him, by simply marking off a boundary and taking a deed from some one to it, when there was nothing on the land to put the owner on notice of his adverse claim to it, there would be no security for land titles, and the entire doctrine that the settlement of the junior patentee, when without the lap, will give him no possession within the senior patent, would have to be abandoned. The plaintiff, having the title to the land, was in the constructive possession of it. The defendant could not defeat this constructive possession by merely living on an adjoining tract of land not included in the plaintiff's patent, and claiming land within that patent."

In Burnett v. Miller, 174 Ky. 91, 191 S. W. 659, 662, the applicable rule is thus stated:

"It is insisted that the possession of Jones, under whom Edwards claims, extended to the 100-acre tract when he acquired the patent therefor, and thereafter included that tract. In support of this position we are cited to the cases of Cates v. Loftus' Heirs, 4 T. B. Mon. 439; Overton, etc., v. Perry [129 Ky. 415], 111 S. W. 369, 33 Ky. Law Rep. 931; and Northrup''s Trustees v. Sumner's Trustees, 132 Ky. 156, 116 S. W. 699. The rule in those cases is to the effect that, where one takes title to unoccupied land adjacent to that upon which he lives and in which he claims the fee, his possession extends

to the outside boundary of the newly acquired land. 'As we have since pointed out, however, the above rule does not apply where the newly acquired land is held by another under a superior title. On the contrary, we have frequently written that a party who enters upon land to which he has title cannot, as against the superior title holder, extend his possession to an adjoining tract of land and acquire title thereto by adverse possession, without actually entering upon such adjoining tract and holding it adversely for the statutory period.''

Furthermore, even conceding, for the sake of argument, that Jonah Ison's timber operations, land clearing and house building activities, claimed conducted on certain parts of the Lusk tract sold him, constitute a taking of actual possession thereof by him in 1902 or 1903, when it is alleged he did these things, it nevertheless could not have been continued by him for such a period of time as required by the statute to ripen into title by adverse possession by reason of his death in 1911 and the later conveyance of the land to his granddaughter, the defendant, in 1914, who, it is admitted, never thereunder ''tacked'' continuous possession of this land with its prior adverse holding of Jonah Ison, or ever thereafter entered upon the eastern portion of the land in question or was ever in the actual possession of it at any time.

It is clearly held and established in the Gilliam Case, supra, that the appellant, Kentucky Union Company, had ever since it acquired this Stamper land been in actual and continuous possession through its tenants and those of its predecessors of all the Stamper lands, outside the named exclusions.

It thus follows that, even conceding defendant entered such part of this 94-acre tract to which she held title as being within the Brashear patents, she could not, as against the plaintiff, as holder of the superior title, extend her possession to the adjoining part of this tract, so as to acquire title thereto by adverse possession, as against plaintiff, the Kentucky Union Company.

We therefore are of the opinion that the evidence relied on by the defendant to show title by adverse possession of the land in question is clearly insufficient to establish such holding in the light of the principles and

applicable rules announced in the cases cited and quoted above. We are further of the opinion that the defendant's other pleas of estoppel and of laches are without merit, even if so considered only upon the ground that they were not by the defendant timely pleaded and therefore are not here available as a defense. We are therefore constrained to conclude that we must for the reasons stated disturb the finding of the learned chancellor.

In the case of Oliver v. Noe, 232 Ky. 809, 24 S. W. (2d) 592, 595, this court said:

"It is the invariable rule of this court not to reverse a judgment of the chancellor where the decision is dependent upon the credibility of opposing witnesses, or where the evidence is such as to make doubtful the truth of the matter involved. Yet the rule is equally uniform that the court will weigh and judge the sufficiency of the evidence for itself, and where it is convincing the one way or the other, and it is apparent that the chancellor has erred in his conclusion, the judgment will be reversed. Smith v. Boone, 222 Ky. 1, 299 S. W. 1059."

We are here of the opinion that the evidence clearly and unmistakably preponderates in favor of the plaintiff to the effect that that portion of the Beatty tract lying to the west of line fifteen of the 1839 Brashear survey, as same appears and is designated upon the W. A. Win map No. 1, filed in evidence, is the property of and belongs to the appellee, while the other portion of said 94-acre tract lying to the east of said division line, as stated, is the property of and belongs to the appellant under title thereto derived from the Stamper patent and therefore we conclude that the judgment of the learned chancellor below, not being in harmony with this our conclusion and the views hereinabove expressed, the same should be and is reversed.