## Frazier v. Ison, et al.

(Decided December 3, 1914.)

### Appeal from Letcher Circuit Court.

1. Adverse Possession—Entry and Cutting of Timber—Boundaries.— An occasional entry and cutting of timber on a tract of land by the occupant of an adjoining tract, although both tracts were conveyed by the same deed and the boundary of the tract in dispute is well marked, will not constitute adverse possession of the adjoining tract against one in constructive possession under a senior patent.

2. Land—Constructive Possession.—The law does not recognize two constructive possessions of the same land at the same time, and in case of conflict of titles, depending on constructive possession, the older title will prevail.

3. Land—Action to Recover Possession—Instructions.—In a suit to recover possession of a tract of land, where both parties claim under patents, it was error for the court to refuse to give a peremptory instruction in favor of plaintiff, when it appears that he was the holder of the elder patent, and the defendant had not been in the actual adverse possession of the land in dispute for as much as 15 years.

DISHMAN, TINSLEY & DISHMAN for appellant.

WOOTTON & MORGAN for appellee.

Opinion of the Court by Judge Nunn—Reversing.

This is an action in ejectment instituted by appellant to recover possession of land and $200 damages for timber removed therefrom. When the issues were made up, it appeared that the controversy involved title to only

a 50-acre survey. The case was submitted to a jury, and they found for appellee. From that judgment this appeal is taken.

In April, 1870, George Ison entered upon a survey of 200 acres on Kingdomcome creek, in Letcher county. In January, 1876, Joseph Hall obtained a patent on 4,800 acres, the boundary of which embraced the 200-acre survey of George Ison. George Ison and his son, the appellee, John Ison, claiming through his father, lived upon and have been in the continuous actual adverse possession of the 200-acre tract ever since it was surveyed in 1870, and their title to it is therefore not disputed.

In September, 1882, George Ison made a survey of the 50-acre tract, which, it is claimed, and, for the purposes of this case, may be admitted, adjoins the 200-acre survey. The Joseph Hall patent is older than and embraces the 50-acre survey.

In August, 1895, Joseph Hall sold the 4,800 acres to D. D. Fields, and in January, 1897, Fields conveyed the same to the appellant, James H. Frazier. Frazier and his grantors have never had more than constructive possession of the fifty acres.

In October, 1890, George Ison, by one deed, sold and conveyed to his son, the appellee, three distinct boundaries, one describing the 200-acre survey, and, as appellee claims, another the 50-acre survey. While there is some doubt as to the 50-acre survey being included, it may be accepted as a fact for purposes of this case.

It must be conceded that, unless John Ison and his father, through whom he claims, have been in continuous, open and actual adverse possession of the 50 acres for more than 15 years, then the title of appellant under the Joseph Hall patent must prevail. George Ison and his son have always lived within the 200-acre survey. Although the boundary of the 50-acre survey is clearly marked, yet that alone is not sufficient to constitute adverse possession. Neither will the fact that the prior 200-acre survey was in possession, extend that possession over to and include the adjacent 50 acres surveyed subsequent to the Hall patent, although both surveys were transferred by the same deed.

The only acts of actual adverse possession of the 50-acre survey are the following: Some sixteen or eighteen years prior to the trial of this case, or about the year 1895, a son of appellee cut down some trees with which to build a house, and made about 6,000 rails. No fence was ever

built around any clearing, if such it could be called, and no land was ever cultivated, nor was it cleared so that it could be cultivated. About the time the trees were cut, the son died, the house was never built, and no further attempt was made to occupy the land. It is proven that shortly after this another son went on the 50-acre tract and put up some of the rails, but not to the extent of making an enclosure of any sort. This son did not remain on the land. Several times since then Ison has had a surveyor run the lines. The sum and substance of the testimony is that some timber was cut and the boundary surveyed.

In Wilson v. Stivers, 4 Dana, 634, the court said:

"It is well settled by repeated adjudications that the settlement and residence of Stivers and those under whom he claims, outside of the elder patent, did not give them possession of the interference. And it has been also repeatedly decided that, under such circumstances, the occasional use of the land within the interference, as by cutting timber on it, though continued for twenty years, does not give such possession as bars the right of entry under the elder patent."

To the same effect is Lillard v. McGee, 3 J. J. Mar., 552; Caskey v. Lewis, 15 B. Mon., 27.

In Smith v. Morris, 7 J. J. Mar., 442, the court said:

"Before the junior patentee can acquire such a possession, we deem it essential that he should have entered upon the interference and commenced an improvement of a permanent character, if it be woodland in the wilderness state, and carried on the improvement begun by continued acts, until it shall be completed. If an improvement so made shall be enjoyed until there is twenty years complete from the date of such entry, then the statute may be applied from the date of the entry and commencement of the work; but occasional chopping within the interference and carrying away timber will not do."

In Trotter v. Cassady, 3 A. K. Mar., 365, this court said on the subject of adverse possession:

"It is necessary that the possession claimed as adverse should be shown to be continued and uninterrupted. Or, in other words, if there is any period during the twenty years in which the person having the right of entry could not find an occupant on the land on whom he could bring and sustain his ejectment, that period cannot be counted against him as part of the twenty years."

Since it appears that appellee had not had the actual

and continuous adverse possession of the 50-acre tract, then his only claim to possession is constructive, and comes from the record title of the junior survey. But at that time, those claiming under the Hall patent were already in the constructive possession of this 50 acres, and the law does not recognize a constructive possession of the same land at the same time in two claimants, and in case of conflict of titles depending on constructive possession, the older title prevails.

In Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky., 249, the facts are almost identical with the facts of this case, and the court said:

"So the question comes to this, can a man who is living on a tract to which he has title and which is outside of the plaintiff's claim, obtain adverse possession of land within the plaintiff's older patent by simply taking a deed to it and continuing to live outside of the lap?"

Then, referring to the case of Trimble v. Smith (4 Bibb, 257) and many others cited, the court continued:

"If, in a case like this, a man could, while living on land which he admittedly owned, gain title within an elder patent which adjoined him, by simply marking off a boundary and taking a deed from some one to it, when there was nothing on the land to put the owner on notice of his adverse claim to it, there would be no security for land titles, and the entire doctrine that the settlement of the junior patentee, when without the lap will give him no possession within the senior patent, would have to be abandoned. The plaintiff, having the title to the land, was in the constructive possession of it. The defendant could not defeat this constructive possession by merely living on an adjoining tract of land not included in the plaintiff's patent, and claiming land within that patent."

Whitley County Land Company v. Powers, 146 Ky., 801, is, perhaps, the leading case and the latest expression of this court on the subject, and, as the facts of the case at hand are almost identical, we apply the rule there stated and quote as follows:

"Ownership of land in this State, so far as we are advised, can only be obtained in two ways—one, by what is called a paper title tracing back to the Commonwealth, and the other, by adverse possession. And adverse possession cannot be sustained by proximity or intentions. It can only rest on physical acts—such as will give to the real owner of the land notice that some other person is in

possession of it. In short, to constitute adverse possession there must be such open and notorious acts of physical possession as would put the owner of the land—assuming him to be a person of ordinary prudence and diligence in looking after his estate—upon notice that a hostile claim was asserted to his property. And this character of claim and possession must be continued for fifteen years or more to a well-defined boundary. The surveying and marking of a boundary, the payment of taxes, as well as occasional entries for the purpose of cutting timber or other temporary uses are incidents of adverse possession, but neither one nor all are sufficient in themselves to constitute adverse holding so as to defeat the title and possession of the true owner. It is not necessary that actual notice of the adverse holding should be brought to the attention of the owner. It will be sufficient if the acts of the adverse claimant are of such an open, visible and notorious character as would put the owner upon notice that a hostile claim was asserted. To illustrate, suppose that in each year from 1888 to 1904 the Whitley County Land Company had sent its representative over its lands to see in what condition they were, or who, if any person, was in possession of or trespassing upon them, and this representative had gone around and over this land. He would not have found a single evidence of any kind or character that any person had ever settled on it or enclosed or cultivated any part of it, or exercised any acts of ownership over it. He would probably have found that a few trees had been cut here and there, but that is all; and he would have reported to his employers that their land was undisturbed. And yet, if the contention of counsel for appellee is sound, the claim of Powers to this land was in each of these years silently, quietly and without notice to any person, ripening into a title that in fifteen years would completely divest the appellant land company of its title. The principle of law that would permit the acquisition and divesting of title in this manner has never obtained in this State.''

Counsel for appellee rely upon the case of Northup v. Summer, 132 Ky., 156, and Overton v. Perry, 129 Ky., 415. There are statements in them which do conflict with the opinion above expressed. But, with reference to those cases, this court, in the Powers case, *supra*, said:

''Considering the great number of land cases decided by this court in its history, it is not singular that there

should, in some of the opinions, be conflicting expressions, but we do not think that any case can be found resting upon a state of facts such as is here presented, in which the principle announced in Trimble v. Smith has been distinctly or purposely departed from. It is true that in the cases cited by counsel there are expressions in conflict with the cases relied on to support the views announced in this opinion, but a careful analysis of those cases will show either that the question here involved was not directly presented or that the facts were different from the facts appearing in this record, and many, if not all, of them could well be distinguished from this case.''

We have reached the conclusion that the lower court erred in refusing to give a peremptory instruction to find for appellant, and the case is reversed with direction to enter a judgment in conformity with this opinion.