## Patton et al. v. Lucy.

Oct. 25, 1940.

As Modified and Extended on Denial of Rehearing March 14, 1941.

E. Poe Harris for appellants.

H. F. Price for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

The Patton brothers appeal from a judgment denying them an injunction sought to restrain appellee from cutting and removing timber from land which had been conveyed to them January 1940, by Wm. Church. Lucy had been theretofore and was then cutting and removing timber under an oral contract with Church. On May 2, 1940, appellants filed petition alleging purchase, ownership and possession of the land; asserting that Lucy was removing timber without lawful right, and sought perpetual injunction, and by amendment damages for timber alleged to have been removed since their purchase.

Lucy denying material allegations of the pleadings alleged affirmatively that he had purchased the timber from Church in 1936, with permission to enter, cut and remove it, and was thus engaged at the time of purchase and "would so continue unless the court directed otherwise." He alleges that appellants knew at the time of purchase that he was the owner, in possession of and engaged in removing the timber under his contract, and that the sale of the land did not include the timber. He plead Section 210, Kentucky Statutes, Champerty Statute' in bar of their claim to the timber under their purchase. Appellants replied first traversing the pleading; secondly asserting that the alleged sale of timber was not evidenced by any writing or memorandum, pleading in bar Kentucky Statutes, Section 1409-13, which provides:

"No contract for the sale of standing trees or standing timber shall be enforcible by action unless the said contract or some memorandum thereof be in writing, signed by the person to be charged or his duly authorized agent."

The third paragraph charges that the contract contemplated severance and removal of the timber, and that since no time was fixed, it followed that the cutting and removing was to be in a reasonable time, which appellants fix at twelve months. A fourth paragraph alleges that appellee had not purchased, and had no right to cut and remove poplar or small size timber, though not alleging such cutting or removal. Demurrers to paragraphs 3 and 4 were overruled. The allegations of the amended petition and affirmative allegations of the reply were traversed of record by agreement. After

considerable proof was taken, chiefly relating to the contract between Lucy and Church, which was not in writing, the case was submitted; the chancellor delivering a comprehensive opinion, incorporated in the record, which clearly stated the issues and the basis of his conclusion in holding Lucy's plea of champerty to be sound and availing.

The court correctly held that the plea to the effect that Lucy's purchase of the timber was void, because not in writing, Kentucky Statutes, Sections 470, 1409-13, was unavailing. The purpose of the statute is apparently intended to fix the right of parties to "be charged" and to fix the status of contracting parties. Bennett v. Tiernay, 78 Ky. 580; Crawford v. Woods, 6 Bush 200. This contract while perhaps not originally enforcible as between parties was ratified by Church in a written memorandum, and besides a stipulation recognized the contract.

The chancellor finding no case precisely in point on the exact question (and after cursory examination neither have we) said the case of Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S. W. (2d) 48, "is very near this case," and in point of one principle of applicable law may be fitting; that point was to the effect that the sale of standing timber "in the circumstances, was a champertous conveyance." The "circumstances," however, as indefinitely shown to exist in that case, differ from the circumstances and facts shown and as will be considered in the instant case.

We think the court was in error in holding the deed to appellants falls in the class of transactions which under the statute are held champertous. It is true the deed was one of general warranty as to title; also that there was no specific reservation or exception contained in the deed. However, when we read the stipulation we find that it was agreed that Church conveyed the fee to appellants, "subject to such rights as the said Lucy has in the timber thereon," and that "since the conveyance appellants have been the owners in fee and in possession of said land, subject to such rights the said Lucy has in said timber."

That appellants knew that Lucy was cutting and removing the timber prior to and at the time of their purchase is amply shown in the evidence, but they had

been assured by Smallridge and an attorney that the contract had failed, because Lucy had not complied with its terms by paying the second installment of $100 thereon, when requested by Smallridge, the caretaker. In other words, they looked upon him as a trespasser. This installment was paid to and accepted by Church after the deed was made, hence a further ratification of the contract by Church. The effect of this stipulation to some extent supplies the lack of exception or reservation in the deed, and though it was agreed that the concession was not to affect Lucy's plea of champerty, it does have effect on the enforcement of the plea.

But, above and beyond the conclusion expressed, the discussions of which will be carried no further, we are of the opinion that the plea was not availing on another ground, and this is—applying the well-defined rules evidenced by our numerous opinions—the sale here involved was one of personal rather than of the real property, and Kentucky Statutes, Section 210, relates "exclusively to sales and conveyances of real estate in the adverse possession of another who claims absolute title thereto." Holmes v. Clark, 274 Ky. 349, 118 S. W. (2d) 758, 763.

There was no formal written contract between Lucy and Church. In proof neither Lucy nor Smallridge mention the matter of time for removal, so we are relegated to other proof in order to determine the character of and conditions attending the transaction.

In the early part of 1936, Smallridge and Lucy contemplated the purchase of the timber from Church. Later Smallridge decided otherwise and, as we gather from the Church letter to him in May 1936, suggested a contract with Lucy, to which Church agreed. Upon receipt of this letter to Smallridge, or soon thereafter, Lucy began to cut and remove timber to a saw mill on a place nearby. Lucy later removed the mill to the Church place; sawed a while and then stopped. At a time, not specifically stated, Smallridge says Lucy let the mill set for two months and paid rent. "He agreed to rent it for three months, and he was to pay $10 a month for any time over that." Lucy apparently did not pay the rent for he said: "I told him to pull out of there and quit paying rent." The mill was pulled out to "the side of the road," but Lucy later went back and resumed operations.

There appears in the record a written contract between Lucy and Smallridge, and one Fisher, of date July 1936, which though signed was never carried out, wherein it was agreed that Fisher should buy all the sound merchantable timber, cross ties, switch ties, and sawed timber that could be produced from the Church place. The specifications showed the sizes of timber to be delivered, and excepted such timber as Lucy and Smallridge should want for their individual "building purposes." This is pointed out as evidencing the fact that Lucy may not have purchased all the timber on the place, including small growth which would later develop into merchantable timber, as seems to be his contention.

Smallridge also said that small poplar was reserved. The apparent claim of appellee, that he was entitled under the contract to move his mill on the premises, there remain and wait for immature trees to develop, does not seem to have been in contemplation of the parties, and would lack balance. Appellee estimated that the timber bought under the contract would amount to about 700,000 feet, and that at the time of his deposition there was left, as he says, subject thereto, about 300,000 feet, all bought for $200, which he and Smallridge proposed to sell to Fisher for $600, who offered $400, and out of which, up to March 27, 1940, Lucy had cleared approximately $1,000. Appellee admitted that had there not occurred a "slump in the market I would have had it off in a year," which would indicate that he had in contemplation the immediate severance of the timber.

In the case of Cheatham v. Head, 203 Ky. 489, 262 S. W. 622, the issue was whether or not the timber sold was real or personal property. The litigation involved Section 1409-14, Kentucky Statutes, but the court reviewed and adopted the ruling in other cases, wherein we had distinguished the character of such property. We cited the case of Byassee v. Reese, 4 Metc. 372, 83 Am. Dec. 481, and quoted:

"* * * according to the weight of authority, a sale of standing trees, in contemplation of their immediate separation from the soil, by either the vendor or vendee, is a constructive severance of them, and they pass as chattels, and, consequently, the contract of sale is not embraced by the statute [of frauds]."

The court in support of the principle announced in the Byassee case cited six other cases, the latest being Gabbard v. Sheffield, 179 Ky. 442, 200 S. W. 940, 944, 15 A. L. R. 1, in which it was said:

"The rule by which standing trees, which are sold in contemplation of immediate severance from the soil, are converted from realty into personalty is founded upon the equitable doctrine that, that which was intended to be done will be considered as having been done."

In the Cheatham case, supra [203 Ky. 489, 262 S. W. 624], we defined the term "immediate severance":

"The phrase 'immediate severance,' as so employed does not mean a severance 'at once,' but the term 'immediate' as therein used is a relative term and contemplates a severance as soon as can reasonably be done under the circumstances, which include the amount of timber, its accessibility, labor conditions, etc. If, therefore, no time is fixed for the removal of the timber, it must be done if it is to be treated as personalty within a reasonable time, circumstances and conditions considered; and if the time is fixed and the circumstances and conditions show it to be reasonable, then the trees become personalty from the time of their purchase."

In the Byassee case, supra, we said:

"The phrase, 'in contemplation of immediate separation from the soil,' is used to distinguish a sale of standing trees, or growing crops, which passes no interest in the land, except a license to enter upon it for the purpose of removing them, from a contract conferring an exclusive right to the land for a time for the purpose of making a profit out of the growth upon it."

The rule laid down in the Cheatham case as to the implication of law, where there is no time fixed for, but parties contemplated severance, that the timber must be removed within a reasonable time, finds favorable expression in Hudson v. Cox, 210 Ky. 30, 274 S. W. 1118; Kentucky Coal & Timber Dev. Co. v. Carroll Hardwood Lumber Co., 154 Ky. 523, 157 S. W. 1109; Oates v. Yeargin, 115 S. W. 794; Siler v. Louisville Property Co., 107 S. W. 266, 32 Ky. Law Rep. 911; Evans v. Dobbs,

112 S. W. 667, 33 Ky. Law Rep. 1053; Hurt v. Chess & Wymond Co., 111 S. W. 285, 33 Ky. Law Rep. 767.

In the absence of agreement as to time in which standing timber is to be removed, applying the rules of construction with reference to such contracts as the one under discussion as evidenced by the cases cited, we are clearly convinced from the testimony in the case, such as it is, and the circumstances shown, it was in contemplation of the parties and certainly of Lucy, that the timber which he contracted for was to be immediately severed, giving the word "immediately" the construction placed on it in the Cheatham case, supra.

As we have noted, the petition was dimissed on the court's ruling on Lucy's demurrer to the first paragraph of plaintiff's reply. The court no doubt carried this demurrer back to plaintiff's petition. Regardless of what was done in this respect, the chancellor held that it became unnecessary to consider other questions, and the other issues raised.

As we observe the remaining issues, we conclude that they are by pleadings and stipulations brought down, first as to whether or not, since the Pattons acquired title, the appellee has had a reasonable time in which to remove the remainder of the purchased timber, and which right, as stipulated, passed to him under the Church to Patton deed. There was an issue as to whether Lucy purchased all or only part of the timber. Such proof as there is in the record is conflicting and not clear.

There was an issue as to the value of timber removed by Lucy since Patton's purchase. This should be, and is, as to the value of such timber as was removed by Lucy after he had had a reasonable time to remove the remainder following the purchase.

It is true, as suggested, there is proof in the record, both as to the time necessary to remoe all the timber, and as to the value of all which had been removed. However, the only proof as to time, quantity and values was given by Lucy himself in a deposition taken as if on cross-examination in March of 1940, prior to the filing of the amended petition seeking damages for timber removed. Neither of the Pattons, nor any of their witnesses testified on this point, nor was Lucy examined on

these points on cross-examination when testifying for himself. Lucy's proof was hardly sufficient to justify us to pass on the question of reasonableness of time, following the conveyance, or on vaules.

Since the record is in the condition as recited, and the chancellor did not undertake to pass on these questions of fact, judgment is reversed and the case remanded for such proceedings as the parties may desire in the way of further pleading or proof on the issue as above stated.