# Stephens v. Kidd et al.

June 23, 1944.

Stephens & Steely for appellant.

H. C. Gillis for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

In this opinion the appellant, E. L. Stephens, will be called plaintiff, and the appellee, C. W. Renfro, will be called defendant. The other appellee, John Kidd, was merely a nominal defendant and will be referred to by name.

Stephens filed a petition in equity to enjoin Kidd and Renfro from entering upon and cutting timber from a tract of land located in Whitley County to which plaintiff claimed title and described by metes and bounds in his pleading as containing 200 acres. Kidd's answer was a traverse. In a separate answer and counterclaim, after traversing the petition, Renfro asserted ownership to the land as his pleading described it and asked that his title thereto be quieted. The reply denied the affirmative matter in Renfro's answer and pleaded adverse possession in the plaintiff and champerty on the part of defendant. Both parties agreed in briefs that the land in controversy contains approximately 300 acres.

Upon hearing the case on merits the chancellor adjudged Stephens was the owner of the 23.68 acres he had in actual possession and that Renfro had title to the remainder of the land. Renfro accepted the judgment but Stephens appealed.

Stephens and Dr. A. Gatliff jointly acquired several thousand acres of wild, unfenced timber lands in Whitley and surrounding counties. On December 4, 1909, a deed was made from Gatliff to Stephens wherein he conveyed the latter 902 acres which had been conveyed to them jointly by Roberta S. Bryant in 1903. Defendant deraigned his title through Henry M. Young and it runs back to the W. C. Gillis 550 acre patent in 1852, but there is some conflict in the evidence as to whether it covers the land in controversy; also he claims under a Knox County Seminary patent of 1000 acres issued in 1810, but there is a break in defendant's chain of title under this patent. Plaintiff's title under the Bryant deed goes back to the Hudson-Wait patent of 10,000 acres issued in 1854 which is junior to the patents under which defendant claims. Both parties practically admit in briefs that they are relying upon adverse possession to establish their respective titles.

In 1903 Gatliff and Stephens erected a house on the Bryant tract near where it is contended it joins with the 700 acre Cook & Moore patent and the 763 acre Boone County Seminary patent owned by them. All three tracts were unfenced timber lands, it being their idea that a fenced clearing around the house and occupancy thereof by a tenant would give them actual possession of a part of each tract they held under color of title, and their

constructive possession would extend to the utmost boundaries of all three tracts and prevent persons from holding any part of the lands adversely to them by constructive possession. Plaintiff kept a tenant in this house continuously and 23.68 acres were cleared and fenced and defendant does not dispute the fact that plaintiff's adverse possession of the land under fence was for more than the statutory period and ripened into title.

The three questions confronting us are: 1. Did plaintiff have constructive possession of this entire 902 acre Bryant tract by reason of his tenant occupying the house and the clearing situated thereon? 2. Was the land in controversy included in the boundary of the papers under which defendant claims? 3. Did the defendant interrupt plaintiff's adverse possession in 1911, or take actual possession of the land in 1921 or 1922 and hold it adversely to the plaintiff for more than 15 years?

The parties are in accord as to the law of adverse possession of unfenced, unoccupied land. The rule is that where one enters into the actual adverse possession of such land under a deed describing it so that it can be run by a surveyor, his possession will be deemed coextensive with the boundary described in the deed, although the boundary described might be wholly insufficient to constitute a well-marked boundary if there had been no deed; but if the entry is not under color of title, his possession is limited to his actual enclosure or cultivation, unless he has also described by well-defined or well-marked boundaries a larger tract embracing his settlement or enclosure. Fox v. Hinton, 4 Bibb 559, 7 Ky. 559; Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S. W. 34; Jones v. Hargis, 286 Ky. 353, 150 S. W. 2d 928.

The Bryant deed conveyed 902 acres by courses and distances and plaintiff testified that he saw it surveyed. Carl Spencer, a surveyor testifying for defendant, stated the Bryant tract could not be surveyed by running the first line S. 27.30 W. 400 poles (which plaintiff now asserts is his east line), but that it could be surveyed by running the first line "S. 400 poles to a red oak and six sweet gums, standing near a branch on the headwater of Bunches Creek, a corner of said survey, (W. C. Gillis)", which is the first call in the Bryant deed. Plaintiff admits he has lost the land between the lines "S. 400

poles" and "S. 27.30 W. 400 poles" through adverse possession of others and that now his eastern boundary is the line S. 27.30 W. 400 poles.

Defendant's title comes through Henry M. Young to whom Veatch conveyed 200 acres in 1892, which land was a part of the 550 acre W. C. Gillis patent of 1852. In 1908 the Commonwealth conveyed to the Kentucky Lumber Company (hereinafter referred to as the Company) 1000 acres covered by the Knox County Seminary patent issued in 1810, reciting in the deed that the land was sold for taxes while the property of William Laforce and that the Commonwealth became the purchaser at the tax sale. But there is nothing in the record showing Laforce ever obtained title to that patent or that it was sold for taxes, and the briefs say a diligent search fails to reveal such facts.

A controversy arose between Young and the Company as to their common boundary line and in 1916 they exchanged deeds by which Young conveyed to it a tract of land described by courses and distances as containing 225 acres which included the land involved in this action. In turn the Company conveyed Young a tract of land containing 700 acres with what is now admitted to be the true east boundary of the land in controversy (S. 27.30 W. 400 poles) as the east-west boundary line between Young and the Company. By mesne conveyances defendant acquired all title the Company had to the land in dispute.

As Young moved to and lived upon the land when it was conveyed to him in 1892 and claimed to the boundaries of his deed, it is urged by defendant that when Gatliff and Stephens obtained their deed from Bryant in 1903 they did not acquire constructive possession of the land in controversy because it was included in the boundaries of Young's deed, and there cannot be two constructive possessions of the same land at the same time. 2 C. J. sec. 538, p. 246; 2 C. J. S., Adverse Possession, sec. 198; Turk v. Wilson's Heirs, 266 Ky. 78, 98 S. W. 2d 4, 9.

Defendant has correctly stated the rule, but the facts here do not come under it. The record shows that the land in dispute does not lie within the boundary lines of Young's deed, but that it adjoins Young, and Young's west line was the east line of Stephens. Therefore Young was never in the constructive possession and

the statute started running in favor of plaintiff when he and Gatliff obtained their deed, constructed a house and put a tenant on the land in 1903.

Stephens acquired title to this land by adverse possession for more than 15 years unless defendant and his predecessors in title interrupted the running of the statute, or by actually holding adversely to Stephens for 15 years. Kidd testified that in 1911 he entered upon this land with a force of hands and cut timber for two or three months for the Company. Again in 1921 or 1922 he entered upon it for W. E. Delaney, grantee of the Company, and remained for more than a year cutting timber, made roads and established sawmill sites without complaint from plaintiff or his tenants, the latter being employed on the job. These were not occasional trespasses upon the land by the Company or its grantee for the purpose of cutting timber, which have been held not to constitute adverse possession, Frazier v. Ison, 161 Ky. 379, 170 S. W. 977; Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. 2d 1075, but amounted to actual occupancy which would ripen into title if adverse to plaintiff.

Defendant argues that the Company's entry on the land through Kidd interrupted plaintiff's possession and that in order to obtain title it was necessary for plaintiff to hold possession against all others during every hour of every day for the fifteen year period, citing such cases as Combs v. Ezell, 232 Ky. 602, 24 S. W. 2d 301 and Flinn v. Blakeman, 254 Ky. 416, 71 S. W. 2d 961. Such is the rule, and in addition thereto plaintiff had the burden of proving his adverse possession against the defendant's claim that the Company entered under color of title. Hatton v. Williams' Ex'r, 259 Ky. 548, 82 S. W. 2d 774; Madden v. Bond, 269 Ky. 31, 106 S. W. 2d 95.

Plaintiff replies that he has met this burden, and that the reason he or his tenants did not complain of Kidd's entries was that they were not made adversely out by reason of the Company having purchased the timber from Gatliff and Stephens. The following excerpt from Kidd's cross-examination appears to be all the evidence there is in the record to substantiate plaintiff's claim that the Company bought from Gatliff and Stephens, or either of them, the timber which it cut from the land.

"Q. Don't you know that the Kentucky Lumber Company bought from myself and Dr. Gatliff the timber you have been telling about cutting thirty odd years ago? A. Well, they called it Gatliff timber, I don't know who they bought it from."

Neither party seems to have developed this particular branch of the case, which has now become all important in view of our conclusion that the land in controversy does not lie within the boundary lines of defendant's deed.

The general rule is that when this court reverses a judgment rendered by a court of equity it will exercise its inherent power and direct what judgment the chancellor shall enter and thereby terminate the litigation. However, we have many times written that where the case was not fully developed and where the issue may be accurately ascertained, we will not direct the entry of a final judgment, but will send the case back for further proof. Preece v. Woolford, 200 Ky. 604, 255 S. W. 285; Ellis v. Darby Coal Co., 238 Ky. 692, 38 S. W. 2d 673; Strunks Lane & Jellico Mountain Coal & Coke Co. v. Anderson, 276 Ky. 576, 124 S. W. 2d 779.

To pass title to standing timber it is necessary that the contract or some memorandum thereof be in writing and signed by the person to be charged, or his authorized agent. KS 1409-13, KRS 371.100; Coleman v. Kelley, 206 Ky. 39, 266 S. W. 906; Patton v. Lucy, 285 Ky. 694, 148 S. W. 2d 1039. It occurs to us that if Gatliff or Stephens sold this timber to the Company, it would not be difficult for Stephens to produce positive and convincing evidence of that fact. But we refuse to allow the parties to take additional proof upon the question of whether the disputed land lies within the boundary lines of the Young deed as the proof was fully developed on that issue, and we are quite sure that our decision is correct that it does not so lie.

The judgment is reversed with directions that additional proof be taken by either or both parties as to whether the Company in cutting the timber from the land in controversy was acting under color of title to the land or under contract of purchase from Gatliff and Stephens, or either of them.

Whole Court sitting.