# Kentucky Coal Lands Company v. J. D. Hughes Lumber Company, et al.

### (Decided February 3, 1920.)

## Appeal from Leslie Circuit Court.

1. Public Lands—Patents or Grants.—Where a body of land is covered by more than one patent, the senior patent will prevail unless the claimant under a junior patent has actually entered within the lap and reduced the boundary in question to actual possession and so held and claimed it openly and adversely for the statutory period.

2. Public Lands—Conflicting Entries, Claims or Patents—Possession.—One who purchases a large boundary of land to which the vendor has title to a part only, and enters upon the part to which he has title though he has a marked boundary around the other lands described in his deed, his entry upon that to which he has title does not give him possession of the marked boundary covered by a senior patent unless he enters within the lap and takes actual possession thereof, and an occasional entry on such land and the cutting of timber therefrom does not amount to actual possession within the rule adopted in this state.

3. Evidence—Deeds—When Sufficient to Show Title.—Where the bill of exceptions shows that a deed in the chain of title under which the plaintiff claims was read to the jury as a part of the testimony for plaintiff, the name of the grantor and the name of the grantee and the book and page in which it is recorded, although it is not shown by the bill of exceptions that the deed was actually made a part of the evidence other than to read it as a part of the testimony, it will be sufficient to show title, and the failure to make the deed a part of the evidence where it has been read to the jury without objection on the part of the defendant, will not amount to a break in the chain of title.

CLEON K. CALVERT for appellant.

LEWIS & LEWIS, BRONAUGH & BRONAUGH and A. T. W. MANNING for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

The title to five separate boundaries of land was involved in this case below, and title to three of them is involved on this appeal. The Kentucky Coal Lands Company instituted this action in the Leslie circuit court against the J. D. Hughes Lumber Company and three individuals, alleging that it was the owner of certain lands located in Leslie county and averring that the defendants were each unlawfully and wrongfully in the possession thereof, and holding the same against the plaintiff. It prayed to be adjudged the owner of said property and the immediate possession thereof, and also asked for $300.00 damages for wrongful detention. An amended petition was filed setting up a new boundary.

The defendant, Hughes Lumber Company, answered in four paragraphs. By the first paragraph it averred that the defendant was without sufficient knowledge or information to form a belief as to whether the lands described in the petition were the lands of plaintiff, and therefore denied the ownership of plaintiff to said lands, and also denied that it had wrongfully detained the lands from the plaintiff; denied that plaintiff was damaged. While in the second paragraphs the defendant denied that the possession of the lands was obtained by its co-defendants, but averred that if said lands were held by its co-defendants against the plaintiff that such holding was without its knowledge and consent, describing the boundaries. By the fourth paragraph it set up title to a large boundary of land described as lying adjacent to the tracts of land described in the petition and amended petition. It was further averred that George Collins, one of the defendants named in the petition, was a tenant of the Hughes Lumber Company, and in possession of the lands described for its use and benefit. Later the defendant, Hughes Lumber Company, amended its answer withdrawing part of the allegations and part of the denials of the original answer. It also set up title by adverse possession to all of the lands in the boundary described in its answer which lapped upon or interfered with the lands claimed by the plaintiff. Issue was joined by reply and a trial was had before a jury, and the jury returned this verdict:

"We, the jury do agree and find for the defendant company numbers 3, 4 and 5. We, the jury, do agree and find for the plaintiff number 1 and number 2."

These five tracts of land were numbers 1, 2, 3, 4 and 5, and the jury found tracts designated on the map as numbers 1 and 2 for the plaintiff, Kentucky Coal Lands Company, and tracts numbers 3 and 4 and 5 for the defendant, Hughes Lumber Company. The coal lands company prosecutes this appeal but the Hughes Lumber Company has no cross-appeal. It will, therefore, be unnecessary for us to consider tracts numbers 1 and 2 because the title to these is conceded by appellee to be in appellant, Kentucky Coal Lands Company.

Tract number 3 lies within the Nelson Wilder 800 acre patent No. 12,812 issued in 1849. It also lies within the William Lusk 400 acre patent No. 6,869, issued in 1845. Both these patents are claimed and owned by the Kentucky Coal Lands Company. Tract No. 3 lies within the Woolery Bolin 125 acre patent No. 47,081, issued in 1871, and it also lies within the William Bolin 2,500 acre patent No. 8,317, issued in 1846. The oldest patent covering tract No. 3, is the one issued to William Lusk in 1845, and which is owned by the plaintiff, Kentucky Coal Lands Company. It is insisted, however, that the Kentucky Coal Lands Company has not shown a complete chain of title from the patentee, Nelson Wilder, down to itself for the 800 acre tract. Appellee also contends that there is not sufficient evidence of the conveyance of the 800 acre patent from E. H. Patterson, trustee, to the Kentucky Coal, Iron & Development Company, one of the mesne conveyances upon which appellant relies. The bill of exceptions, however, contains the following: "He (witness for plaintiff) then read to the jury as a part of his testimony in this case a deed of conveyance from E. H. Patterson, trustee, to the Kentucky Coal, Iron & Development Company, dated the _____ day of _____, 18_____, and now of record in the office of the clerk of the Leslie county court in deed book No. 5, at page 208 therein, which deed conveys the same land described in the foregoing patents, with senior patents excluded therefrom." While the deed itself does not appear in the record, the bill of exceptions does show that the deed was read to the jury as a part of the testimony in the case, and while this is rather a loose practice it was sufficient to have warranted the jury in be-

lieving that Patterson as trustee had conveyed the lands to the Kentucky Coal, Iron & Development Company, and we think does not amount to a break in the evidence of the plaintiff showing its chain of title. The reading of the deed to the jury as a part of the testimony amounts to an introduction of the deed as evidence, and if appellees had desired the deed to be made a part of the evidence they should have entered a motion to that end, and having failed to do so they are in no position now to complain. Therefore, tract No. 3, is the property of the Kentucky Coal Lands Company unless appellee and its predecessors in title have claimed and adversely held said boundary for the statutory period next before the commencement of this action, in which event tract No. 3 belongs to the Hughes Lumber Company. The plaintiff, Kentucky Coal Lands Company, produced its paper title from the Commonwealth down to itself and relies upon this paper title.

The appellee, lumber company, claims tract No. 3 by adverse possession and relies upon the fact that a part of this boundary was cleared and under fence at the time and for some years before the institution of this action. It further contends that one of its tenants, George Collins, lived either on this boundary or very near it and held, used and cultivated the same for several years previous to the commencement of this suit; that one Pleas Hacker built a house very near this tract of land some thirty or forty years ago and lived there for several years and cleared up a few acres of ground, and that since that time other people have occupied the Hacker place as tenants of appellee, and that this holding was open and adverse to the coal lands company and continued for more than the statutory period, thereby vesting in appellee the title to said boundary of land. So the only question with respect to the title to this parcel is the actual possession thereof by appellee for the statutory period before the commencement of this action, because it is manifest that the legal paper title is in the coal lands company. On the question of possession of this boundary William Bolin testified that there had been a field around the Hacker house for seventy or seventy-five years "I supposed." Another witness named George Collins testified that he was the tenant of the lumber company and moved into a little house near this bondary of land about fourteen years before the com-

mencement of this action, and had continuously lived there since that time up to the time of the giving of his evidence. But it is shown by Collins that the field, now cleared and fenced in this boundary, had been in existence only three or four years before the suit was commenced, if that long, but that a field of three or four acres around the Hacker house which was on the outside of the Wilder patent had existed back as far as he could remember This being the evidence for the lumber company on the subject of adverse possession, it is clear that the trial court erred in submitting the question of adverse possession of this tract to the jury, because there was no evidence that the defendant had actually held and claimed the lands adversely for as much as fifteen years before the commencement of this action.

Tract No. 4, is entirely in the forest and has no improvements on it and never had. There is no clearing, fencing or buildings on it, and no evidence that any such ever existed within this boundary. The Kentucky Coal Lands Company has the superior paper title to this tract and has clearly manifested it by producing the same on the trial.

The appellee, however, claims the land under junior patents, and it also claims this land by adverse possession and established beyond question that in 1887 or thereabouts its predecessor in title caused this boundary of land to be surveyed, or rather the outside boundary of the land which it now claims to be surveyed, and the line clearly and definitely marked by hacking trees with an ax so as to indicate its outside boundary; that in 1890 the land was sold by Bolin to appellees' predecessor in title and a deed made conveying the land and describing it by metes. and bounds just as the lines had been marked in 1887; that the marked lines continued plain from 1887 until the bringing of this action; that any one could follow the lines without a compass or chain. Unquestionably tract number 4 in·controversy lies within the boundary claimed by appellees and within the boundary which was marked by its predecessor in title in 1887, and which was conveyed in 1890 and the boundary, described in the deed, and which deed was duly placed to record in the office of the clerk of the Leslie county court in that year. This tract also lies within the Nelson Wilder 800 acre patent issued in 1849, and this is the senior patent covering this tract. As ap-

pellee's tenant did not live within the lap but lived upon lands of appellee entirely on the outside of the boundary in question, its possession did not extend by construction onto the lands to which appellant had the legal title, for it is a rule that one entering on land to which he has title and therefore a right of entry, can not without an actual entry thereon, extend his possession so as to embrace and reduce to possession adjoining lands to which he has no title. Whitley County Lands Company v. Power, 146 Ky. 801; Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232; Frazier v. Ison, 161 Ky. 379; Pratt v. Boggs, 171 Ky. 106; Warfork Land Co. v. Brewer, 172 Ky. 598. This rule is applicable to the facts in hand, because we cannot presume that one who enters upon lands of his own and on which he has a right to enter, does so with the intention to tortuously take possession of other lands adjacent thereto without his having entered thereon. It is a rule generally recognized that the intention of every one will be construed to be in accordance with good morals and within the law until a contrary intention is manifested by his acts or words, and we will never presume that one intended to commit a tort or to trespass upon the lands of another until that intention is clearly manifested by some action which shows his purpose to commit a tort and to take possession of the property to which he has no title

We have also held frequently that the mere marking of a boundary without reducing to actual possession the land in question will not amount to an adverse holding. Especially is this true where the claimant is rightfully in possession of the part of the lands on which he settles, but has no right of possession to the remainder of the lands enclosed by his marked boundary. We held in the case of Warfork Land Co. v. Brewer, 172 Ky. 598, that where an owner of a tract of land on which he resided made a deed to another for his land and included in his deed a large boundary of adjoining land to which he did not have title and which was covered by a senior patent, although never in the actual possession of any person, the purchaser could not by virtue of his deed and by marking a boundary line to adjoining land embraced by his deed, acquire it by adverse possession unless he actually entered upon such adjoining land and took dominion over it. The same rule was applied to similar facts in the case of the Whitley Land Company

v. Powers, 146 Ky. 801, in which we held, "Where A
owns a tract of land, which he conveys to B, in connec-
tion with another adjoining tract that he does not own
and that is covered by a senior patent, the fact that the
deed described both tracts as one boundary did not have
the effect of placing B in the adverse possession of the
land to which A had no title, if B continued to reside on
the land to which A has title and never had physical ad-
verse possession of the adjacent land. In other words,
a man who is living on a tract to which he has title and
which is outside of the plaintiff's claim, cannot obtain
adverse possession of land within the plaintiff's older
patent by simply taking a deed to it and continuing to
live outside of the lap." The facts in these cases are
somewhat like the facts in this case with respect to the
adverse claim. Here appellee owned a large boundary
of land on which it had the right to place its tenant and
it did so place him. In acquiring this boundary of land
it took and had recorded a deed to a lot of lands covered
by a senior patent and to which its vendor had no right
or title. It did not reduce the outlying land to actual
possession and not having done so its marked boundary
and deed did not amount to such dominion over the
land as to perfect title in the claimant under the statutes.
Hence the trial court should not have submitted the
question of adverse possession of tract No. 4 to the jury.

With respect to tract number 5, the evidence is quite
sufficient to show that a house was built within the
boundary and occupied for many years before the com-
mencement of this suit, and that at least a few acres of
land had been cleared and cultivated there long before
the institution of the action. The facts shown with re-
spect to this tract were entirely sufficient to justify the
trial court in submitting the question of adverse pos-
session to the jury, and the jury was warranted in re-
turning the verdict finding tract number 5 to be the
property of appellee. It follows, therefore, that the
judgment with respect to tracts Nos. 1, 2 and 5 is af-
firmed, and reversed as to tracts Nos. 3 and 4 for a new
trial If upon another trial the evidence of adverse pos-
session is in substance the same as upon the last trial,
the court will peremptorily instruct the jury to find and
return a verdict for the plaintiff as to tracts Nos. 3 and
4.

Judgment affirmed in part and reversed in part.