### Fields, et al. v. Wells, et al.

(Decided May 15, 1928.)

Appeal from Leslie Circuit Court.

Adverse Possession.—Owner of land could not extend his possessions beyond tracts to which he had title and on which he made his residence and performed all other acts of ownership denoting adverse possession, by marking lines of boundary lying beyond tract of which he was in possession; a naked claim of ownership, however long persisted in, being insufficient to establish adverse possession so long as acts denoting adverse possession were confined to other boundaries.

T. G. LEWIS and W. H. LEWIS for appellants.

J. M. MUNCY for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

In this equitable action the title of a particularly described boundary of land containing approximately 70 acres is in issue; appellants by their pleadings claiming to own it, and appellees by their pleadings claiming to own it. By the judgment entered appellees were adjudged to own the land in controversy, and appellants have appealed.

Phillip Wells, one of the appellees, is the father of his coappellees Andy, Uriah, and Clem Wells. Their claim to ownership of the land in controversy is founded upon the contention that in 1880 or 1881 Phillip Wells

went into possession of a 200-acre boundary of land, including the land in controversy, and has been in the actual, adverse possession of all of it, claiming it to a well-marked and well-defined boundary ever since. The facts shown by the record, as this court views the case, disclose the erroneousness of the judgment of the chancellor and the fallacy of the contentions of the appellees. The three sons of appellee, Phillip Wells, claim under a deed from him and he is interested because he retained a life estate in the land conveyed to his sons. This deed was made in 1916, and it is the only title paper introduced in evidence by the appellees defining the boundary lines of the land they now claim to own. Waiving the very serious question whether the boundary given in this deed may be held to be a well-defined boundary within the meaning of that term, as used in the principle of law here relied upon, it is sufficient to say that they have not been in possession under it long enough for possession to ripen into title.

The appellees are shown by the evidence herein to own the John Baker 100-acre patent issued by the commonwealth June 29, 1858, and a portion of the Henderson Baker 200-acre patent issued by the commonwealth March 7, 1848. The beginning corner of the John Baker 100-acre survey is in the western line of the Henderson Baker 200-acre survey. The land in controversy lies north of the John Baker 100-acre survey, and east of the Henderson Baker 200-acre survey. It lies in the angle formed by the junction of the lines of those two surveys at the beginning corner of the 100-acre survey and between these two lines and the top of a mountain lying north and east thereof. The undisputed evidence herein establishes that Phillip Wells and his three sons, the appellees herein, who claim the land in controversy by adverse possession, have all lived within the boundary lines of the two Baker patents, title of which they own, and all of their clearings and inclosures are within the lines of those surveys. They have never cleared and inclosed or cultivated any land lying beyond the boundary lines of the John and Henderson Baker surveys and within the boundaries of the land in dispute herein. We may concede then the most that appellees claim; when in 1880 or 1881 Phillip Wells went into possession and set up his residence within the boundary of the surveys to which he acquired title, concede that he also went beyond the boundary of those surveys and sought to take into his

possession lands lying beyond them by marking out a boundary. In so doing he marked the lines of the boundary to which he thus sought to extend his possession so that it could be held to be a well-marked boundary within the rule on that question. From that day down to the day this action was instituted he continued to claim to the boundary so marked out. Though these things all be true, he could not by so doing extend his possession beyond the boundaries of the tracts to which he had title, on which he made his residence, and within which he performed all the other acts of ownership denoting adverse possession.

The principles of law decisive of this appeal were fully considered by this court in Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2. In that case the question now before us was presented both ways; that is, it was claimed by appellees that they and those under whom they claimed had acquired title of the 114 acres in controversy by adverse possession, both by being in possession claiming to a well-marked boundary without color of title and by being in possession claiming to a well-defined boundary under a deed as color of title. Both claims were rejected because those so claiming owned the title of 100 acres of land adjoining the 114 in controversy, and it appeared that they lived, had their inclosures and clearings, and performed all the acts of ownership relied upon to establish the adverse character of their possession within the boundaries of their 100-acre tract. That case contains an exhaustive review of our previous opinions on the question, and treats at length of the principles of law involved and the reasons upon which they are founded, and it is referred to for a complete answer to the questions presented by this appeal. So far as they relate to the principles of law involved, the facts of the two cases are not to be distinguished.

Having performed all of the acts relied upon to establish the adverse character of their possession within the boundary of the John and Henderson Baker surveys, title of which they owned, appellees could not by going beyond the boundaries of these surveys and marking another boundary, however well they may have marked it, obtain title of the land to this marked line. A naked claim of ownership, however long persisted in, is not sufficient. So long as their acts denoting adverse possession were confined to the boundaries of the surveys,

title of which they owned, their possession was likewise so confined.

The principle decisive of this case on its facts was written in these words in Burnett v. Miller, 174 Ky. 91, 191 S. W. 659:

"We have frequently written that a party who enters upon land to which he has title cannot, as against the superior title holder, extend his possession to an adjoining tract of land and acquire title thereto by adverse possession, without actually entering upon such adjoining tract and holding it adversely for the statutory period."

The Whitley County Land Company case, supra, makes plain that title of vacant and unappropriated land is regarded as vested in the commonwealth, and under this rule the commonwealth is to be held to be the superior title holder. See, also, the subsequent cases of Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629; Ky. Coal Land Co. v. Hughes Lumber Co., 187 Ky. 354, 218 S. W. 1024; Bird v. McHargue, 182 Ky. 27, 205 S. W. 957; Elliott v. Hensley, 188 Ky. 444, 222 S. W. 507; War Fork Land Co. v. Marcum, 180 Ky. 352, 202 S. W. 668; Altoona Trust Co. v. Ison, 170 Ky. 706, 186 S. W. 515.

The land in controversy was patented to the father of appellants in 1882. The patent which issued to him lapped in part upon the John Baker and the Henderson Baker surveys owned by appellees. The Baker patents being the elder, appellants lay no claim to any part of the boundary of their survey covered by the elder grants. The record discloses no controversy as to the proper location of the lines of these various surveys. The paper title of the appellants is conceded to be perfect, and, as we have seen, appellees' claim to title of the 70 acres in controversy by adverse possession cannot be sustained.

For the reasons indicated, the judgment herein is reversed, and the cause remanded, with direction that a judgment in conformity with this opinion be entered.