# North American Acc. Ins. Co. v. McAlister.

March 20, 1942.

Wheeler & Shelbourne for appellant.

J. D. Via for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This appeal is from a judgment for $1,000 recovered by the appellee, Emmit McAlister, against the appellant, North American Accident Insurance Company, in an action upon an accident policy in which appellee's wife was the insured and in which appellee was named as beneficiary.

So far as material to this controversy, the policy insured against death resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means and sustained by the insured in the wrecking or disablement of any private automobile in which she was riding. In the petition it was alleged that the insured came to her death by drowning while driving an automobile. In an amended petition it was alleged that the insured came to her death by the wrecking or disablement of a private automobile and that "said automobile was driven off into a pond and wrecked and disabled and threw her out of the automobile into a pond of water which caused her death."

Appellee testified that on the night of April 25, 1940, he and his wife visited the home of their son and returned to their home about 9:30 P. M. The trip was made in an automobile owned by appellee's daughter. When they returned from this visit he and his wife went into the house and he sat down to read and turned on the radio and fell asleep. After sleeping about thirty minutes he awoke and found that his wife was not in the house. He noticed a light on the porch and found that the car had been moved from where he and his wife had left it. He also noticed that the gate near the barn, which had been closed, was open. He turned on a flood light, which he used to light up the barn, and on doing so saw the car in a pond just below the barn. He rushed down to the pond and found the car in the water five or six feet from the edge of the pond. He waded out to the car and found that his wife was not in it and then found her lying in the water about six feet from the car, apparently dead at that time. He dragged her body to the bank of the pond and worked over her for a while and then called a neighbor and he and the neighbor attempted for sometime to revive her. When a physician arrived he pronounced her dead. According to appellee, she was dead when he removed her from the pond. Appellee also testified as to tracks made by the car in going down the road past the barn, these tracks showing that shortly after the car went through the gate, where a turn had to be made, instead of making the turn it went on over a bank and down the bank into the pond.

Other evidence established that there were no marks or signs of violence on the body of Mrs. McAlister and

that a quantity of water was found in her lungs, indicating that she met her death by drowning. Numerous witnesses testified as to tracks made by the car from the point where it was left by appellee until it entered the pond.

The case was submitted to the jury under an instruction covering numerous matters about which there was no issue, for instance, as to the issuance of the policy. On the material point in the case the jury were instructed to find for the plaintiff if they believed that the insured "came to her death by the wrecking or disabling of a private automobile of the exclusive pleasure type, within which the insured was riding or driving at the time." This instruction did not submit one of the most material and vital features of the case, that is, whether the wrecking or disablement was accidental.

The first ground urged for reversal is that the petition did not state a cause of action. This position is well taken. The policy insured against death resulting "from bodily injuries affected solely through external, violent and accidental means and sustained in the wrecking or disablement of an automobile." The petition as amended contained no allegation that the wrecking or disablement alleged was accidental. It wholly failed to allege a death occurring within the terms of the policy.

The next ground urged for reversal is that the instructions were erroneous and it is apparent that our conclusion with reference to the first ground is determinative of this ground also. The instruction did not cover the accidental feature of death and under it the jury were permitted to find for the plaintiff even though the insured came to her death by intentional wrecking or disablement of the car. The evidence was sufficient for the jury to indulge the inference that Mrs. McAlister came to her death in any one of three ways, namely, by accident, by suicide or by foul play and, under the instruction, the jury were permitted to find for appellee if she came to her death in any one of these three ways. This was highly prejudicial and on the next trial the instructions should be so framed as to predicate recovery on an accidental wrecking or disablement—the language of the policy should, in substance, be followed.

It is further contended that error was committed in refusing an instruction offered by appellant defining the

meaning of the words "wrecking" and "disablement." By this offered instruction the court was asked to define wrecking or disablement as "such injury to or breaking of the auto as renders same incapable of being operated until the broken or injured parts are repaired." Clearly, the court should have defined the meaning of these terms, which was not done. However, we do not think the offered instruction correctly presented the law. Appellant, in support of this instruction, relies on Inter-Southern Life Ins. Co. v. Cochran, 259 Ky. 677, 83 S. W. (2d) 11, in which an instruction of this type was approved. That instruction is contained in Stanley on Instructions, Section 461. In that case, however, the evidence established conclusively that the automobile, which collided with a garage door, was so damaged that it could not be moved under its own power until repairs were made and the question was not presented as to whether there was a disablement within the meaning of the policy where such a factual situation was not disclosed. Other cases in which a more liberal view in favor of the insured was taken are: Federal Life Insurance Co. v. Sivels, 256 Ky. 520, 76 S. W. (2d) 608 and Federal Union Life Insurance Co. v. Richey's Adm'x, 256 Ky. 262, 75 S. W. (2d) 767. In the latter case the New Standard Dictionary (1932) definition of the word "disable" was quoted as follows: "To take away the ability of; to render incapable of proper and effective action," and, following this definition, it was said "the proper action of an automobile requires that all four wheels remain upon the ground or pavement on which it is then standing or running." It was held that an automobile which collided with a truck, sustaining a slight dent or bending of the right front fender, was disabled within the meaning of such a policy although the car proceeded under its own power without repairs after the collision. It is our conclusion that when the driver of an automobile loses control thereof so that it departs from the road on which is is being operated, throwing the driver from the automobile, there is disablement within the meaning of a policy of this character, regardless of resultant damage to the automobile. The evidence in this case was sufficient to justify the inference by the jury that this occurred and the case was one properly submittable to the jury although it was submitted under erroneous instructions as above indicated.

It is next insisted that the trial court was in error

in permitting appellee to testify as to acts done or omitted to be done by his wife. In this complaint also there is some merit although most of such testimony given by appellee was rather harmless and immaterial. Appellee was an incompetent witness to testify as to acts done by his wife by reason of Subsection 2 of Section 606 of the Civil Code of Practice, prohibiting one from testifying for himself as to an act done by one who is dead at the time the testimony is offered, and this incompetency was not removed by Chapter 95 of the Acts of 1940 amending Subsection 1 of Section 606. That amendment merely permits husband and wife to testify for or against each other but had no effect on Subsection 2 of Section 606. On the next trial appellee should not be permitted to testify as to acts done by his wife. He is competent as a witness, however, as to the tracks made by the automobile and as to the situation at the pond as he found it. His testimony as to finding his wife's body in the pond was not incompetent since it did not involve an act done by his wife, she being dead at the time appellee found her.

Complaint is also made as to the testimony of appellee and other witnesses for him in which they were permitted to express conclusions as to the manner in which the automobile was driven from tracks or marks showing on the ground. For instance, appellee in one place stated that ''the back right wheel showed on the ground the brake was applied.'' Numerous instances of this character appear. On the next trial the witnesses should be permitted to testify only as to the tracks or marks, leaving the jury to draw such inferences therefrom as they might see proper.

It is contended by appellant that when the incompetent testimony of appellee is eliminated there was no evidence that Mrs. McAlister came to her death as a result of accidental means and on account of the wrecking or disablement of the car but we are unable to agree with this contention. Such testimony of appellee as was competent, when taken in connection with other competent testimony, was sufficient to warrant the jury in finding that the death of the insured occurred as a result of accidental disablement of the car.

Judgment reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.