## McWHORTER et al.

v.

## CARTER et al.

Court of Appeals of Kentucky.

March 26, 1954.

Hile Pritchard and James A. Hicks, Albany, for appellants.

L. C. Lawrence, Jamestown, John Sloan, Albany, for appellees.

COMBS, Justice.

The question is which of two sets of heirs have superior title to a 40-acre tract of land on Spring Creek in Clinton County. Both factions claim through W. W. (Square) Carter, a civil war veteran who died in 1909. "Square", of course, is a colloquialism for Squire. The appellees are the devisees and the children of a devisee under his will. The appellants claim through the will of Laura Carter, a daughter-in-law of "Square," who died about 1908. Appellants contend that "Square" conveyed the land to Laura in 1900 by a deed which was never recorded and is now lost. The chancellor gave the bulk of the land to the appellees but found that about 10 acres of the tract was not covered by the deed under which they claim. The remnant of 10 acres was awarded to appellants. There is an appeal and a cross-appeal.

Both sides apparently are in good faith, and both have presented plausible arguments to support their respective claims. Much of the confusion is due to the coincidence that both "Square" Carter and his daughter-in-law, Laura, devised their real estate to a life tenant. "Square" left his land to his wife, Ermine, for life and then to his children, one of whom is an appellee here and another of whom is the predecessor in title of the other appellees. Ermine Carter died in 1950. Laura Carter left her land to her husband, Oscar Carter, for life and to certain named nieces and nephews under whom appellants claim. Oscar lived on the land and used it as his own until his death in 1952. The appellants contend that Oscar lived on the land as life tenant under the will of his wife, Laura; the appellees say that Oscar lived on the land as tenant by sufferance of their mother, Ermine Carter, the life tenant under the will of "Square" Carter.

We look now to the arguments and inferences in favor of the respective claims. More specifically, since it is admitted that "Square" Carter owned the land at one time, we look to the evidence upon which appellants rely to establish a conveyance from "Square" to his daughter-in-law, Laura. In order to appraise this evidence, we must interrupt momentarily our discussion of the Carter clan and turn to the Carr family, who were also pioneer settlers in Clinton County.

Laura Carter was a daughter of Thomas A. Carr. Appellants contend that Thomas A. Carr wanted to convey to his daughter, Laura, a piece of land, and that by arrangement of the parties Thomas A. Carr conveyed to "Square" Carter another tract of land on Spring Creek in consideration of "Square" conveying to Laura the 40 acres in dispute. This hypothesis has documentary support from two sources. The deed from Thomas A. Carr to "Square" Carter, executed in 1900 for about 45 acres of land on Spring Creek, recites that it was "in consideration of exchange of land this day made by said parties." The deed also contains the following:

> "Said land is the share Laura C. Carter drew as her share of her father's land, and this deed was to have been made to said Laura C. Carter, wife of W. O. Carter, and she now authorizes this deed made to the party of the second part to this deed."

Thomas A. Carr died about 1920. In his will, executed in 1919, the land in controversy is referred to as having been conveyed by "Square" Carter to Laura Carter in consideration of an exchange of land between Thomas A. Carr and "Square" Carter.

In addition to the documentary evidence, it is shown by the testimony that in 1900 "Square" Carter, who had been living on this land, moved to another place which he owned in the same neighborhood. Laura Carter and her husband, Oscar, thereupon moved on the land and lived there until

Laura died in 1908. They tore down the old log house on the place and built a new house and a barn. In 1905 Laura and Oscar conveyed about one acre of the 40-acre tract to Louis Moles. In 1907 they conveyed two acres out of the boundary to Burcelia Garrett. The deeds covering these two parcels were recorded and a house was built on each of the tracts prior to 1909. This occurred during the life of "Square" Carter and at a time when he lived only a short distance away. It is noted, however, that in these two conveyances the grantors gave as their source of title another deed which "Square" Carter had made to Oscar covering another tract of about 26 acres, located approximately one mile east of this land.

Laura Carter, by her will written in 1900, devised to her husband, Oscar, for life "all my estate real and personal." Laura had no recorded title to any real estate in Clinton County and unless she considered herself the owner of the land in dispute, the reference in her will to real estate was a senseless gesture. Of some significance also is the fact that for the period of more than 40 years during which Oscar Carter lived on the farm following the death of his wife, Laura, he listed the property as his own and paid the taxes on it.

Appellants introduced as a witness W. T. Carter, a grandson of "Square" Carter and one of the devisees under the will of Laura Carter. He testified that he was present when "Square" made the deed to Laura for this land and that he later saw the deed in a table drawer at the home of his Aunt Laura. Since this witness is one of the grantors in the deed under which appellants claim, he is an interested witness under what was formerly section 606 of the Civil Code of Practice, now KRS 421.-210(2). His testimony that he was present and witnessed the execution of the deed is incompetent; but his testimony that he later saw the deed at the home of his aunt does not involve any transaction with a deceased person and is competent. North American Acc. Ins. Co. v. McAlister, 290 Ky. 88, 160 S.W.2d 385.

There was also certain hearsay testimony by a number of witnesses in regard to the title to this land. We have not considered this testimony in reaching our conclusion.

As against the evidence which we have summarized, there is the fact that there is no record of any conveyance from "Square" Carter to anyone covering this land. Appellees also rely on the testimony of Bradley Carter, the son of "Square," that Bradley's mother permitted Oscar Carter to live on the land in consideration of his paying the taxes on it. We note, however, that this witness was born in 1908, only one year before his father's death, so it is not likely that he remembers any arrangement his mother and Oscar Carter might have had originally in regard to Oscar remaining on this land.

It seems to us that the appellants have proved their case. We are cognizant of the rule that to establish a lost deed the evidence must be clear and convincing, but we think the evidence here meets that test. In fact, there is little evidence to the contrary, and the conduct of the parties, as well as the documentary proof which is available, all point to the fact that "Square" Carter must have conveyed this property to Laura Carter about 1900.

Appellees seek to invoke the rule that in an equity case this court will not reverse the chancellor on a finding of fact where the evidence is such as to leave the mind in doubt as to the correctness of the finding. In this case our mind is not left in doubt. We think it has been established with reasonable certainty that Laura Carter died the owner of this land and that the appellants, her successors in title, now own the land.

In view of the conclusions expressed above, it is unnecessary to discuss the question of adverse possession.

The judgment is reversed on the direct appeal with directions to enter a judgment for the appellants; on the cross-appeal the judgment is affirmed.