**Stephen CAUDILL, d/b/a Caudill Lumber Company et al., Appellants,**

**v.**

**Jesse BATES, Appellee.**

Court of Appeals of Kentucky.

Nov. 18, 1955.

Rehearing Denied March 2, 1956.

Stephen Combs, Jr., Whitesburg, Cleon K. Calvert, Pineville, for appellants.

S. M. Ward, Hazard, Harry M. Caudill, Whitesburg, for appellee.

WADDILL, Commissioner.

The appellee, Jesse Bates, filed this action against appellant, Stephen Caudill, d/b/a Caudill Lumber Company, to restrain him from cutting and removing timber from a certain 25–acre tract of land which appellee allegedly owns. The appellant filed an answer, counter-claim, and cross-claim, bringing in as defendants Bud, Hazel, and Lizzie Tolliver, from whom he had purchased the timber. The Tollivers, also appellants, filed their joint and separate answer, alleging ownership of the surface of this tract. The appellant, M. A. Dun-

lap, intervened in the action claiming that he was the owner of the minerals under this land. Appellee was adjudged the sole owner of the tract and a permanent injunction was issued.

The appellants contend that the appellee has not shown sufficient title to enable him to maintain this action to enjoin trespass, and further contend that they have established title to the tract by adverse possession.

The tract involved is timberland, and is not in the actual possession of appellee. The appellee first attempted to establish title from a patent from the Commonwealth to his father, Robert Bates, Sr. However, it developed at the trial that the land was covered by two prior patents, one to Rice Bentley, and the other to James Hall. The Bentley patent covers the northern portion of the tract involved and the Hall patent the southern portion. The appellee established title to the Bentley tract through mesne conveyances from the heirs of Rice Bentley.

The appellants urge that Rice Bentley conveyed this particular tract of land before his death to J. D. Cooley, and therefore, the Bentley heirs received no interest in the northern portion of this land upon Bentley's death. Appellants introduced copies of certain deeds in an effort to substantiate this contention. However, the description of the property conveyed in those deeds involved large acreage and the appellants produced no further evidence to show that the land in question was embraced therein. The appellee introduced a civil engineer who testified that he had examined the deeds upon which appellants rely and could not find that they pertained to the tract in controversy. This question of fact was resolved by the court in favor of appellee which established his title to the northern portion of the tract in controversy. Under the state of the record, we cannot say that the court's finding on this phase of the case was clearly erroneous. McWhorter v. Carter, Ky., 267 S.W.2d 736.

James Hall, the owner of the patent to the southern tract, died intestate leaving several children, among them Dorcas Hall Bentley and Cornelia Hall. Appellee established title to the interests of Dorcas Hall Bentley and Cornelia Hall, and it was found by the court that the other children had died without issue leaving Dorcas and Cornelia as their only heirs. Appellants strenuously attack this finding. Since appellee established title to the Rice Bentley tract and title to an undivided interest in the James Hall tract, it is not necessary to a proper decision in this case to review this finding because the interest shown in the land by appellee was sufficient to maintain an action to enjoin trespass and to quiet the title to the property in question insofar as the parties to this suit are concerned.

The second question presented is whether or not the appellants have established title to the tract by adverse possession. In 1917, Elizabeth Pigman and her husband, Elam Pigman, parents of appellant Bud Tolliver, sold the minerals under their land, which is located adjacent to the north edge of the disputed tract, to the Consolidated Coal Company. The mineral deed did not include the tract in controversy. It was customary for the Consolidated Coal Company to fence their mineral tracts, which they did in this instance. However, the fence was intentionally placed completely around the tract in dispute. Appellant, M. A. Dunlap, was, at that time, land agent for the coal company, and hired the fencing crew for this job. Dunlap testified that he agreed with the Pigmans to extend the fence beyond the limits of the Pigman tract so as to include the Bates land in exchange for the minerals under it. The Pigmans kept their bargain and the minerals under the Bates land were deeded to Dunlap in 1923.

Appellee testified that upon learning of the fence, the coal company was notified that their agent had fenced the Bates property. The company then relinquished any claim to any land and minerals claimed by Bates. The fence has remained in

place continuously to the present time. However, there is testimony that the fence had been cut in various places during different years by appellee and his father.

The appellants contend that by being in actual possession of the Pigman tract, their actual possession has extended to the fence and has included both tracts since 1917. Appellee urges that the appellants cannot acquire title by adverse possession in this manner unless it was their enclosure or that of their predecessors. He further contends that the fence erected by Dunlap does not fulfill this requirement. However, in Culton v. Simpson, 265 Ky. 343, 96 S.W. 2d 856, this court said that an adverse possessor without color of title may claim to a boundary marked either by himself, or by another, but, if marked by another, the possessor must show an intent to claim to the line marked.

▆ Appellants urge that the fence has converted the Pigman tract and the tract in question into one connected body of land so that actual possession at any point within the fenced enclosure is actual possession of the entire enclosure. They rely on Elliott v. Hensley, 188 Ky. 444, 222 S.W. 507, 509, in which it was said:

"* * * when the owner of contiguous tracts of land, that he has acquired by separate deeds or patents, converts them by fenced inclosure into one body, the interior lines * * * will be obliterated, * * *."

However, it does not appear that this reasoning would apply where the owner of land attempts to extend his boundary into land to which he has no color of title. In such a case the original boundary lines would remain extant until title to the en-

croached property is established by adverse possession. In order to establish the actual possession necessary for adverse possession, a party is required to show more than an enclosing fence, constructed by another person, for another purpose. In Fields v. Wells, 224 Ky. 620, 622, 6 S.W.2d 1110, 1111, this Court said that the owners of a tract of land "* * * could not by going beyond the boundaries of these surveys [their property line] and marking another boundary, however well they may have marked it, obtain title of the land to this marked line. A naked claim of ownership, however long persisted in, is not sufficient." In that case the attempt to extend the boundary was by clearly marking a surveyed line, not by erecting a fence, but the principle appears to be the same.

▆ Where the owner attempts to extend his boundary to a boundary marked by another he must clearly show an intent to claim to the line marked. Appellants have introduced evidence to the effect that one corner of the tract in question, consisting of about ¾ of an acre, was cultivated by them for a number of years. There is also testimony that appellants sold and cut timber on various occasions, however, the number of trees was small and no regular pattern of activity appears. These acts are not sufficient to establish adverse possession, and the judgment of the court denying their claim of adverse possession of the tract in controversy was correct.

Since the claim of M. A. Dunlap to the minerals under the Bates land rests upon the title of the Tollivers, and his admitted fraudulent acts, it must also fail.

Judgment affirmed.